# Commonwealth of Pennsylvania, Appellant, *v.* Daniel D. Jones.

*Mines and mining—Constitutional law—Bituminous coal act.*

The power of the legislature to define and classify coal mines as it has done, and to legislate for each class separately must be regarded as settled on the authority of Durkin v. Kingston Coal Co., 171 Pa. 193. The Bituminous Coal Act of May 15, 1893, P. L. 53, does not offend the constitution in being either local or special legislation, nor in containing more than one subject.

*Statutes—Constitutional enactments as to sufficiency of title—Act of 1893.*

The unity of a subject of a statute is to be determined by its paramount purpose rather than by the details through which that purpose is to be accomplished. The subject may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their nature and particular effect, yet all contributing to it, and comprised within the principal subject. Everything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of its expressed purpose, is sufficiently indicated by such title.

*Mines and mining—Sufficiency of title of bituminous coal act.*

The title of the Act of May 15, 1893, P. L. 52, meets all the constitution

demands as to sufficiency. The objections to its sufficiency are without foundation. It is not necessary that the title should refer specifically to matters legitimately implied from its purpose as indicated by the title. The essential parts of a statute are the declaratory, the directory, the remedial and the vindicatory; and if the title clearly expresses the subject to which the statute is to apply, it is sufficient without expressing in detail the character of the several parts.

A penalty is implied in the expression of a purpose to which it is a necessary adjunct.

*Constitutional prohibition of local legislation—Query as to the effect of police power.*

It would seem necessary in considering the constitutional prohibition of " any local or special law " upon the subjects enumerated in art. III. sec. 7, of the constitution, to take into account the provision of art. XVI., sec. 3, that "the exercise of the police power of the state shall never be abridged.

It is difficult to regard the latter provision as merely aimed at legislative abridgment of the police power of the state. The broad and unqualified terms of the section relating to the police power would seem to imply that no abridgment in any manner was intended.

It is not necessary however, to invoke this construction to preserve the constitutionality of the act in the present case. SMITH, J.

Argued Feb. 10, 1897. Appeal No. 35, Feb. T., 1897, by plaintiff, from order of Q. S. Clearfield Co., Sept. Sess., 1896, No. 40, granting motion to quash indictment. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Motion to quash indictment framed under the provisions of the Act of May 15, 1893, P. L. 52. Before GORDON, P. J.

The motion to quash the indictment was made for the following reasons:

The indictment in this case is framed under the provisions of the Act of May 15, 1893, which is clearly unconstitutional, as it offends against the third section of article III. of the constitution.

1. The Act of May 15, 1893, P. L. 52, contains more than one subject.

2. The act is special legislation and includes only a portion of the bituminous coal mines of the state.

3. The subjects contained in act of May 15, 1893, are not clearly expressed in the title.

The above motion was granted in an opinion by GORDON, P. J.,

holding that the act of assembly of May 15, 1893, under which this indictment was framed is unconstitutional.

*Error assigned* was in sustaining defendant's motion to quash the indictment.

*A. H. Woodward*, district attorney, and *David L. Krebs*, with them *William Paterson* and *George W. Zeigler*, for appellant. —An act of assembly cannot be declared void unless it violates the constitution clearly, palpably, plainly, in such manner as to leave no doubt or hesitation : Sharpless v. Mayor of Phila., 21 Pa. 147, 164 ; Com. v. Smith, 4 Binn. 116 ; Eakin v. Raub, 12 S. & R. 330 ; Fletcher v. Peck, 6 Cranch. (U. S.) 87 ; Craig v. Church, 88 Pa. 42.

The constitution of a state is entitled to receive a liberal construction : Com. v. Hartman, 17 Pa. 118 ; Mauch Chunk v. McGee, 81 Pa. 433 ; Navigation Co. v. Coons, 6 W. & S. 101.

Laws which are of general application, affecting a large mass of the community are entitled to more liberal construction than laws affecting individuals or small portions of the community : Ervin's Appeal, 16 Pa. 256.

The subject-matter of the act is bituminous coal mines.   Under this subject the legislature has undertaken to provide a comprehensive and beneficent system for the operation of such mines, embracing and requiring all the precautions and appliances which experience has shown to be necessary.

In Road in Phœnixville, 109 Pa. 444, STERRETT, J., in reference to the constitutional requirement of unity of subject, said : " In determining the unity of the subject, regard must of course be had to the ultimate object to be attained.   Details leading to the accomplishment of that object are cognate to the subject of legislation, and therefore form a part thereof : " Blood v. Mercelliott, 53 Pa. 391 ; Thomasson v. State, 15 Ind. 455.

There are many acts of assembly, some of great importance, containing penal clauses not expressly referred to in the title. A notable instance of this is found in the Act of May 13, 1887, P. L. 108, which act is construed in Com. v. Sellers, 130 Pa. 32.

The act regulating the holding of primary elections approved June 29, 1881, P. L. 128, is in point.   So, also, the Corporation Act of 1874 and its supplements of April 30, 1879, P. L. 36, and

more especially the Act of June 2, 1891, P. L. 176, known as the Anthracite Coal Act.

The Supreme Court in construing the constitutional amendment of 1864, in which the language was practically the same as the provision of the present constitution, SHARSWOOD, J., says in Com. v. Green, 58 Pa. 226, 234: "The intention of the constitutional amendment was to require that the real purpose of a bill should not be disguised or covered by the general words and for other purposes which was formerly so common, but should be fairly stated." See also Yeager v. Weaver, 64 Pa. 425.

As to the sufficiency of the title see Com. v. Lloyd, 2 Pa. Superior Ct. 6, affirmed in 178 Pa. 308.

It is not necessary that the title of the act should be a complete index of its contents: Road in Phœnixville, 109 Pa. 44; Com. v. Lloyd, supra.

If the title fairly gives notice of the subject of the act so as reasonably to lead into the body of the bill, it is all that is necessary: Washington Borough v. McGeorge, 146 Pa. 248; Com. v. Lloyd, supra.

The act of assembly of May 15, 1893, here under discussion, is held by the learned court below to violate section 7 of art. III. of the constitution.

The legislation on the subject of regulating the mining of coal is really a classification of the subject-matter. And it has the advantage of classification that is natural and not artificial. It is not judicial classification but classification in recognition of nature herself. The courts have recognized the classification of cities: Wheeler v. Philadelphia, 77 Pa. 338; Kilgore v. Magee, 85 Pa. 401; Ayar's App., 122 Pa. 266.

And also the classification of counties: Lloyd v. Smith, 176 Pa. 213.

Manifestly there exists a necessity for the classification made in these acts of assembly, such as ought to be recognized by the courts: Ayar's App., 122 Pa. 266.

*W. Irwin Shaw* with him *Oscar Mitchell*, for appellee.—The Act of May 15, 1893, P. L. 52, is unconstitutional for the reason that it is in direct violation of section 3, article III. of the constitution of 1874, which provides that, "no bill, except general

appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." This act contains more than one subject as—(*a*) It provides for the operation and regulation of all coal mines in the state, not now included in the anthracite boundaries. (*b*) The act by sections 1 and 2 of article XXI., and by section 1 of article XXII. makes certain acts as well as omission to perform certain acts in reference to any mine, or shaft in the state, a misdemeanor. The acts and omissions mentioned in article XXI. and in the definitions of "coal mine," "excavation," "shaft," "slope," "operator," and "superintendent," contained in section 1, article XXII., apply to all "coal mines," "shafts," "excavations," "slopes," "operators" and "superintendents," and to all persons violating any of the provisions of said sections in any part of the state of Pennsylvania. (*c*) This first section of article XXI. creates a new offense. (*d*) The act furnishes an entirely new and arbitrary definition of the term "bituminous coal mine."

The act is also unconstitutional for the reason that the subject-matter thereof is not clearly expressed in the title. There is no hint in the title of this act of any criminal liability: Road in Phœnixville, 109 Pa. 44; Sewickley Borough v. Sholes, 118 Pa. 165; Dorsey's Appeal, 72 Pa. 192.

The act is also unconstitutional as being a local act regulating labor, trade, mining or manufacturing. All our recent decisions are to the effect that if local results either are or may be produced by a piece of legislation it offends against this provision of the constitution, and is void: Frost v. Cherry, 122 Pa. 417.

If it apply to the whole state, it is general; if to a part, it is local: Scranton School Dist. Appeal, 113 Pa. 176.

The exclusion of a single county from an act makes it local: Davis v. Clark, 15 W. N. C. 209.

The act of May 15, 1893, is special and local in that it limits its operations to geographical boundaries. It cannot be said to be general.

OPINION BY SMITH, J., April 12, 1897:

David D. Jones, a coal mine operator, was indicted under the second section of the twenty-first article of the act of May 15, 1893, charged with having violated the provisions of the first

and second sections of the second article.   The indictment was quashed on the ground that the act of assembly under which it was framed is unconstitutional, whereupon the commonwealth appealed.

It is of common knowledge that coal mining is among the chief industries of the commonwealth, in which thousands of persons are employed and millions of capital invested.   We have both anthracite and bituminous coal, in separate deposits, divided by intervening lands where neither is found.   These geological divisions, commonly known as the " anthracite coal field " and the " bituminous coal field," are, in a general way, as well understood by the people as are the geographical and municipal subdivisions of the state.   There is also a difference in the strata of the two fields, and in their subterraneous conditions, which make necessary different methods and appliances in mining.

During the early development and extension of mining operations in Pennsylvania there was a corresponding increase of casualties, with but little methodical effort to prevent them. The appalling disaster at Avondale, in 1869, demonstrated the urgent necessity of more effective measures for the protection of mine workers, and led to the passage of the general act of March 3, 1870, entitled, " An act providing for the health and safety of persons employed in coal mines."   This act extended to all anthracite mines in the commonwealth, and was followed by other enactments relating to anthracite and bituminous coal mining.   In 1885 the legislation on this subject was collated, revised, and embodied in two separate statutes, each providing an elaborate system of coal mining, one of which applied to the anthracite and the other to the bituminous mines.   The subsequent statutes observe this distinction and relate to but one or the other of these divisions, and in all the legislation on the subject, the differing needs of each coal field have been observed and provided for separately.

The act of May 15, 1893, is entitled, " An act relating to bituminous coal mines and providing for the lives, health, safety and welfare of persons employed therein," and is an exact copy of the title to the act of June 30, 1885, which it supersedes and supplies.   Its punitive provisions are to be found, substantially, in all the general laws on the subject of coal mining, as well as

in the local laws relating to Schuylkill and Mercer counties. The titles of all of these statutes will, in like manner, be found to be substantially the same. In none is there any reference to a penalty for violation of the act.

The title of the act of 1893 indicates that, while it relates to bituminous coal mines, its specific purpose is to protect the " lives, health, safety and welfare of persons employed therein," and an examination of its 129 subdivisions shows that the contents of the act are designed for that purpose, by providing against the manifold dangers incident to mining. There is nothing in the statute that does not relate solely to its main subject, to wit: —" providing for the lives, health, safety and welfare of persons employed" in bituminous coal mines. Considered in view of its manifest object, as expressed in the title, it is difficult to perceive upon what ground it can be said that the act contains more than one subject. Clearly the terms, "lives," "health," "safety" and "welfare" all have reference to the one purpose and subject of the act—the protection of those employed in the mines ; while the remainder of the title designates where this protection is to be furnished.

The unity of the subject of a statute is to be determined by its paramount purpose rather than by the details through which that purpose is to be accomplished. The subject may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects, differing in their nature and particular effect, yet all contributing to it, and comprised within the principal subject. Everything which the nature of the subject of a title reasonably suggests, as necessary or appropriate for the accomplishment of its expressed purpose, is sufficiently indicated by such title.

The legislation of 1885 in relation to the anthracite coal mines was supplemented by the Act of June 2, 1891, P. L. 176. That act applies to all anthracite coal mines employing more than ten persons, and enumerates the counties to be affected by it. The legislation of 1885 in relation to bituminous coal mines was supplemented by the Act of May 15, 1893, P. L. 52. It is with the latter act that we have to deal. It includes " all coal mines in the state not now included in the anthracite boundaries," except those " employing less than ten persons in any one period of twenty-four hours." Whether, as suggested in

the appellee's argument, there may be other varieties of coal than bituminous in the territory described in this act, in the mining of which ten or more persons are daily employed, is not now material. Should there be such, the question whether they are properly described in the title of the act, and therefore fall within its provisions, may well be considered when it arises. Their existence cannot affect the operation of the act on the class of mines to which its language expressly applies.

The question to be determined here is whether this act is unconstitutional, (1) in being local or special legislation; (2) in containing more than one subject; (3) in containing provisions not indicated by its title. The first and second of these views may be considered together.

The power of the legislature to define and classify coal mines as it has done, and to legislate for each class separately, must, on the authority of Durkin v. Kingston Coal Co., 171 Pa. 193, be regarded as beyond question. In that case, though holding one provision of the act of 1891 unconstitutional, the Supreme Court said: " We are not prepared to hold the act of 1891 unconstitutional as a whole. It relates to all anthracite coal mines, and defines what shall be regarded as such mines. Coal may be taken out of the ground by farm owners for their own use, or it may be taken in such small quantities and for such local purposes as to make the application of the mining laws to the operations so conducted not only unnecessary but burdensome to the extent of absolute prohibition. Such limited or incipient operations are not within the mischief to remedy which the mining laws were devised. They are ordinarily conducted for purposes of exploration or for family supply, and ought not to be classed with operations conducted for the supply of the public. The business of coal mining, like that of insurance or banking, may be defined by the legislature. The definition found in the act of 1891 seems reasonable, to be within the fair limits of a legislative definition, and to exclude only such operations as are too small to make the general regulations provided by the act applicable to them. The ground on which we place our judgment is not, therefore, that the act is local:" WILLIAMS, J.

With respect to mining operations and the safety of persons engaged therein, the acts of 1891 and 1893 follow similar lines,

VOL. IV—24

the differences in their provisions being due chiefly to the difference between the two classes of mines, in physical conditions and methods of operation. The language of the Supreme Court respecting the act of 1891, in relation to anthracite mines, has like application to the act of 1893 in relation to bituminous mines. Nothing can well be added to its exposition of the grounds on which the constitutionality of the act of 1891 rests; and the act of 1893 unquestionably stands on the same grounds. The " anthracite boundaries " mentioned in the act of 1893, evidently refer to the anthracite region where that class of coal is found and to which the provisions of the act of 1891 exclusively apply. The practical scope and application of both acts are necessarily limited to their respective fields, in recognition of fixed physical conditions and special requirements.

The ground of unconstitutionality especially urged in the present case is that the title gives no intimation of a penalty, or that any act previously lawful is to be declared criminal. This objection is without foundation. It is not necessary that the title should refer specifically to matters legitimately implied from its purpose as indicated by the title. The essential parts of a statute are the declaratory, the directory, the remedial, and the vindicatory; and if its title clearly express the subject to which the statute is to apply, it is sufficient, without expressing in detail the character of the several parts. It is apparent that the present statute is necessary only because the lives, health, safety and welfare of persons employed in bituminous coal mines are not adequately secured by voluntary action. They can be provided for only through regulations adapted to that end, and such regulations can be effectively enforced only by affixing a penalty to their violation. Such a penalty is implied in the expression of a purpose to which it is a necessary adjunct. This principle has been recognized in several instances. The Act of May 13, 1887, P. L. 108, entitled " An act to restrain and regulate the sale of vinous and spirituous, malt or brewed liquors, or any admixtures thereof," contains penal provisions, without which its declaratory and directory provisions would be ineffective; and its title was held sufficient to embrace the penal provisions : Com. v. Sellers, 130 Pa. 32. In Com. v. Muir, 1 Pa. Superior Court, 578, we held that the title of the Act of July 2, 1895, P. L. 428 : " An act to regulate and

license public lodging houses in the different cities in this commonwealth," sufficiently expressed the provision of a penalty for a violation of the act; and the Supreme Court, 180 Pa. 47, pronounced the act "so obviously constitutional and valid that discussion of the subject is unnecessary." In Com. v. Moore, 2 Pa. Superior Court, 162, in an opinion by our Brother ORLADY, we upheld the constitutionality of a penal provision in the Act of March 22, 1887, P. L. 8, entitled, "An act for the protection of livery stable keepers." No decisions are to be found in this state inconsistent with these. In Hatfield v. Com., 120 Pa. 395, and Com. v. Frantz, 135 Pa. 389, the titles distinctly limited the scope of the acts; the one being "An act to prohibit the issuing of licenses within two miles of the normal school at Mansfield, Tioga county, Pennsylvania," and the other, "An act to prohibit the issuing of licenses to sell spirituous, vinous, malt or brewed liquors in the boroughs of Conneautville and Springs in the county of Crawford." The purpose of these acts, as set forth in their titles, being only to forbid the issue of licenses, penalties for unlicensed sales were held to form no part of the subjects thus expressed; unlawful sales were subject to the penalties prescribed by the general laws. The titles of these statutes indicate limitations on the power of the courts in granting licenses, without reference to the liquor traffic. They in no way pretend to affect any other person or subject, while the purpose expressed could relate only to the courts of those counties. The subject of each title is single and, in its nature, indivisible.

Speaking for myself, I regard it important, in considering the constitutional prohibition of "any local or special law" upon the subjects enumerated in article III., section 7, to take into account the provision of article XVI., section 3, that "the exercise of the police power of the state shall never be abridged."

It is difficult to regard the latter provision as merely aimed at a legislative abridgment of the police power of the state. The legislature may forbear or neglect to exercise the police power, but no legislative enactment on the subject can abridge the power of a subsequent legislature in the premises, and, as this principle exists independent of the constitutional provision, it was unnecessary as a limitation on the power of the legislature.

These prohibitive provisions are to be so construed that both shall stand, if possible. If the prohibition of local or special legislation includes the exercise of the police power in relation to local or special subjects, it is a serious abridgment of that power. The broad and unqualified terms of the section relating to the police power would seem to imply that no abridgment in any manner was intended. Full effect may be given to this section by regarding it as a qualification of the prohibition of local or special legislation, in the nature of a proviso, excepting from that prohibition the exercise of the police power of the state on the subjects embraced in it. Such a construction would harmonize the two constitutional prohibitions, and permit an unabridged exercise of the police power on all matters within its scope, whether general, or local and special, leaving to judicial construction, as heretofore, the character and limitations of that power.

In this view, the act of 1893, even if local or special in its application, may be sustained as an exercise of the police power of the state, for the protection of life, health and property in the mining operations to which it relates. But it is unnecessary to rule the present case on this construction of these constitutional provisions.

For the reasons given on behalf of the court the specification of error is sustained, the order of the court below quashing the indictment is reversed, the indictment is reinstated, and a procedendo awarded.