# Commonwealth *v.* Beatty.

*Criminal law—Sufficiency of indictment—Employee's act of* 1897.

An indictment under the Act of April 29, 1897, P. L. 30, " to regulate the employment and provide for the health and safety of men, women and children in manufacturing establishments," etc., is sufficient in form when the offense charged is set out in the exact words of the act of assembly of 1860, which requires only substantial conformity with the act prohibiting the offense and prescribing the punishment.

*Constitutional law—Sufficiency of title—Employee's act of* 1897.

The title of the Act of April 29, 1897, P. L. 30, fairly invites an examination of the contents of the bill by all who employ men, women and children in industrial establishments mentioned, and everything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of the expressed purpose is sufficiently indicated by the title.

*Constitutional law—Act of* 1897—*Police power—Regulation of hours of labor.*

The employer's act of 1897, secs. 1 and 14, is not in violation of article 1, section 1, as unjustly interfering with an adult female's right of acquiring and possessing property, nor of article 3, section 7, in that it is a special law regulating labor.

The act is a proper exercise of the inherent police power of government, vested in the legislation, to make such laws as they shall judge to be for the good of the commonwealth.

The length of time a laborer shall be subjected to the exhaustive exertion of physical labor is as clearly within legislative control as is the governmental inspection of boilers, etc., to avoid accidents, or of the sanitary conditions of factories and the like to preserve the health of laborers.

In the exercise of its police power the state may enact laws in the interest of public morals, and to protect the lives, health and safety of persons following specified callings, and may thus indirectly interfere with the freedom of contract.

*Class legislation—Constitutional law—Fourteenth amendment.*

Class legislation, discriminating against some and favoring others, is prohibited; but legislation, which, in carrying out a public purpose, is limited in its application, if within the sphere of operation, and which affects all persons similarly situated, is not within the fourteenth amendment.

*Constitutional law—Act of 1897 not a local or special law.*

The act of 1897 cannot be said to be a local or special law "regulating labor, trade, mining or manufacturing," in violation of article 3, section 7, when it applies to all adult females alike throughout the state, who are employed in the establishments mentioned in the act. It relates to and distinctly defines the class of persons affected by it.

Argued Jan. 15, 1900.    Appeal, No. 234, Oct. T., 1899, by defendants, in suit of Commonwealth of Pennsylvania against Robert Beatty and John R. Beatty, from judgment of Q. S. Phila. Co., July Sess., 1899, No. 184, on demurrer.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. POR-TER and MITCHELL, JJ.    Affirmed.    Opinion by ORLADY, J.

Demurrer to indictment.    Before BIDDLE, P. J.

It appears from the record that defendants were indicted for employing adult women more than twelve hours a day. De-fendants demurred to the indictment, the grounds of demurrer being that neither count set out an offense known to the laws of the state of Pennsylvania; that the act of assembly, approved April 29, 1897, P. L. 30, in so far as it limited the right of adult women to work, was contrary to the constitution of the state of Pennsylvania and contrary to the constitution of the United States.

The court overruled the demurrer, BIDDLE, P. J., filing the following opinion:

The indictment in this case charges the defendants with the violation of the provisions of the act of assembly of April 29, 1897.    The pertinent sections of this act which are charged to be violated are comprised in the 1st and 14th sections, to wit:

"Section 1. That no minor, male or female, or adult woman, shall be employed at labor or detained in any manufacturing establishment, mercantile industry, laundry, workshop, reno-vating works or printing office, for any longer period than twelve hours in any day, nor for a longer period than sixty hours in any week."

"Section 14. Any person who violates any of the provisions of this act, or who suffers any child or female to be employed in violation of its provisions, shall be deemed guilty of a mis-

demeanor, and on conviction shall be punished by a fine of not more than $500."

· To this the defendants have demurred, contending, inter alia, that the act, in so far as it applies to adult women, is contrary to the constitution of the state of Pennsylvania, because it is an unjust interference with her right of acquiring and possessing property and pursuing her own happiness; that it is also contrary to the constitution of the United States, because it is an attempt to deprive her of liberty and property without due process of law.

The title of the act of April 29, 1897, is " An act to regulate the employment and provide for the health and safety of men, women and children in manufacturing establishments, mercantile industries, laundries, renovating works and printing offices, and to provide for the appointment of inspectors, office clerks, and others to enforce the same."

So that the object of the enactment, as expressed by the legislature, is " to provide for the health and safety of men, women and children" in certain kinds of labor.   This exercise of power, if it exists at all, must be derived from the police power of the state, and the real question here is whether it has been properly exercised.

In the great manufacturing state of Massachusetts (see Commonwealth v. Hamilton Mfg. Co., 120 Mass. 383), in considering an almost identical statute, Mr. Justice LORD says: "It does not forbid any person, firm or corporation from employing as many persons or as much labor as such person, firm or corporation may desire, nor does it forbid any person to work as many hours a day or week as he chooses.   It merely provides that in an employment which the legislature has evidently deemed to some extent dangerous to health, no person shall be engaged more than ten hours a day or sixty hours a week."

" There can be no doubt that such legislation may be maintained, either as a health or police regulation, if it were necessary to resort to either of those sources for power.   This principle has been so frequently recognized in this commonwealth that reference to the decisions is unnecessary."

Mr. Justice BROWN, in the Supreme Court of the United States, says: " This right of contract, however, is itself subject

to certain limitations which the state may lawfully impose in the exercise of its police powers. While this power is inherent in all governments, it has doubtless been greatly extended in its application during the past century, owing to an enormous increase in the number of occupations which are dangerous, or so far detrimental to the health of employees as to demand special precautions for their well-being and protection or the safety of adjacent property, while this court has held, notably in the case of Davidson v. New Orleans, 96 U. S. 97; 24 L. ed. 616, and Yick Wo v. Hopkins, 118 U. S. 356; 30 L. ed. 230, that while the police power cannot be put forward as an excuse for oppressive and unjust legislation, it may be lawfully resorted to for the purpose of preserving the public health, safety or morals, or the abatement of public nuisances; and a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests : " Lawton v. Steele, 152 U. S. 133; 38 L. ed. 385.

In Pennsylvania the existence of the police power is recognized in numerous instances in our courts as a necessary function of government. Judge RICE, in Com. v. Brown, 8 Pa. Superior Ct. 339, says : " In the exercise of the police power of the state, it may enact laws in the interest of public morals, and to protect the lives, health, and safety of persons following specified callings, and thus indirectly interfere with freedom of contract." And our constitution specially provides, article 16, section 3, that " the exercise of police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal right of individuals or the general well-being of the state."

Surely an act which prevents the mothers of our race from being tempted to endanger their life and health by exhaustive employment can be condemned by none save those who expect to profit by it. The complaint of violated constitutional rights, it will be observed, does not come from those who are employed, but from those who employ them.

The legislature has spoken in no uncertain words on this subject, and our Supreme Court has declared that " a statute will be declared unconstitutional by the court only when it violates the constitution clearly, palpably, plainly, and in such manner

as to leave no doubt or hesitation in our minds: " Sharpless v. Phila., 21 Pa. 147.

We think that this act is clearly within the police power of the state, and the exercise of it in this case justified by the interests of the individual and the community.

Other points of demurrer, in addition to those we have discussed, were also very ably argued before us, but we are unable to perceive their application to the case before us.

The demurrer, therefore, to this bill of indictment is overruled.

Judgment for commonwealth.    Defendant appealed.

*Errors assigned* were (1) in overruling the demurrer. (2) In entering judgment for the commonwealth. (3) In imposing sentence upon the defendants.

*Theodore F. Jenkins*, for appellant.—If the act be construed to intend to make it a crime to contract with an adult woman to work more than sixty hours a week, or if the act be construed to intend to make it a crime to suffer or permit an adult woman to work more than sixty hours in a week, then it is respectfully submitted that the act is contrary to the constitution of the state of Pennsylvania, because:

1. It is an unjust interference with an adult woman's liberty and her right of acquiring, possessing and defending property, and of pursuing her own happiness.

2. It attempts unjustly to deprive an adult woman of her liberty and property.

3. It is a special law regulating labor.

4. It contains more than one subject not clearly expressed in its title: Godcharles & Co. v. Wigeman, 113 Pa. 431; Waters v. Wolf, 162 Pa. 153; Durkin v. Kingston Coal Co., 171 Pa. 193.

If a statute or municipal ordinance is so framed as to discriminate between the persons engaged in the same trade or pursuit, such statute or ordinance is not a police, but a trade regulation, and therefor invalid: Sayre Borough v. Phillips, 148 Pa. 482.

The attempt of the Act of May 20, 1891, P. L. 96, to prevent employers and employees from making their own contracts is merely a repetition of what was vainly sought to be done by

the Act of June 29, 1881, P. L. 147, and therefore is invalid: Showalter v. Ehlan, 5 Pa. Superior Ct. 242.

The Act of July 15, 1897, P. L. 286, entitled "An act requiring the weighing of bituminous coal before screening, and providing a penalty for the violation thereof," is unconstitutional, and there can be no valid indictment founded upon it. It conflicts with the constitution, article 1, section 9 of the bill of rights, and article 1, section 1 of said bill of rights: Commonwealth v. Brown, 8 Pa. Superior Ct. 339.

The Act of June 16, 1891, P. L. 313, in that it permits certain unqualified persons to engage in the retail drug business and excludes others, is not an exercise of police power, but presents a condition of class legislation, and is therefore unconstitutional: Com. v. Zacharias, 3 Pa. Superior Ct. 264.

The Supreme Court of the state of Illinois, whose constitution, so far as the matters we are considering, is almost a verbatim copy of that of Pennsylvania, has held that an act analogous to that in this case was unconstitutional: Ritchie v. The People, 155 Ill. 98; Frorer v. The People, 141 Ill. 171.

The Supreme Court of Nebraska has made a like ruling: Low v. Rees Printing Co., 41 Neb. 127.

The court of errors and appeals of New York has made like rulings: Jacobs's Application, 98 N. Y. 98; People v. Gillson, 109 N. Y. 389.

The Supreme Court of Missouri has made a like ruling: State v. Loomis, 115 Mo. 307; Cooley's Constitutional Limitations, 484.

As to the Supreme Court of Massachusetts, see Com. v. Perry, 155 Mass. 117.

The act is unconstitutional because it contains more than one subject not clearly expressed in its title: Hatfield v. Com., 120 Pa. 395; Com. v. Frantz, 135 Pa. 389; Morrison v. Bachert, 112 Pa. 322.

The act is forbidden by the constitution of the United States: Constitution of the United States, 14th amendment.

The act unjustly discriminates against adult women who may be employed in the industries it mentions. The act also discriminates against women in favor of men: Yick Wo v. Hopkins, 118 U. S. 356.

The police power of the state is limited by the constitution

of the United States: Henderson v. Mayor of New York, 92 U. S. 259; Chy Lung v. Freeman, 92 U. S. 275.

*Alex. Simpson, Jr.*, with him *Ira J. Williams* and *P. F. Rothermel, Jr.*, district attorney, for appellee.—We think that this act is clearly within the police power of the state, and the exercise of it in this case justified by the interests of the individual and the community. It is this decision which is challenged by the present appeal.

A statute will be declared unconstitutional by the court only when it violates the constitution clearly, palpably, plainly and in such a manner as to leave no doubt or hesitation in our minds: Sharpless v. Phila., 21 Pa. 147; R. R. v. Riblet, 66 Pa. 164. It cannot be deemed unconstitutional even though it seems to trespass upon our ideas of natural justice and right reason: Com. v. McCloskey, 2 Rawle, 369; Com. v. McWilliams, 11 Pa. 61.

Two distinctly antagonistic opinions appear on very similar acts. In Com. v. Hamilton Mfg. Co., 120 Mass. 383, an almost precisely similar statute is held constitutional, and in Ritchie v. The People, 155 Ill. 98; 29 L. R. A. 79, a similar statute is held unconstitutional. In the former case the decision was quoted with approval in Opinion of Justices, 163 Mass. 594, and also in Holden v. Hardy, 169 U. S. 366.

The error in the case of Ritchie v. People, 155 Ill. 98, as in most of the cases cited by appellants, is radical. It is founded upon cases like the store-order case of Godcharles v. Wigeman, 113 Pa. 431, which it cites and follows, and which, like Com. v. Brown, 8 Pa. Superior Ct. 339, were cases which had nothing to do with the question of health, but related simply to the right to contract for the price to be paid. But that very question of the public health is the one that is involved in the police power, and points clearly where the line of legislative power is to be drawn.

The act is not a special law regulating labor: Wheeler v. Phila. 77 Pa., 338; Bradwell v. Illinois, 83 U. S. 130.

And the matter seems satisfactorily disposed of by Durkin v. Kingston Coal Co., 171 Pa. 193, and Com. v. Jones, 4 Pa. Superior Ct. 362.

Does the act contain more than one subject which is not clearly expressed in its title?

It is well settled that if the title fairly gives notice of the subject of the act so as reasonably to lead into an inquiry into the body of the bill, it is all that is necessary: Allegheny County Home's Case, 77 Pa. 77; R. R. Company's Appeal, 77 Pa. 429.

That the title need not be a complete index to the bill, see Mauch Chunk v. McGee, 81 Pa. 433, and Yeager v. Weaver, 64 Pa. 425.

Indeed the point is ruled by Com. v. Jones, 4 Pa. Superior Ct. 362.

It is alleged that the act offends against the fourteenth amendment to the constitution of the United States in that it deprives adult women of their liberty and property without due process of law. But the federal constitution does not interfere with the full and free exercise of the police power of the state: Patterson v. Kentucky, 97 U. S. 501; Stone v. Mississippi, 101 U. S. 814.

Nor did the fourteenth amendment add anything to the fundamental rights of the citizen under the constitution: United States v. Cruikshank, 92 U. S. 542.

So that the inquiry here, as under our state constitution is, was the act a valid exercise of the police power of the state? This question has been answered in the affirmative in Holden v. Hardy, 169 U. S. 366, and must be considered as settled, so far as the federal courts are concerned.

OPINION BY ORLADY, J., July 26, 1900:

An indictment against these defendants under the Act of April 29, 1897, P. L. 30, was returned a true bill by the grand jury. A demurrer was filed thereto which after argument, was overruled; a judgment was entered for the commonwealth, and the defendants were sentenced. On argument in this court the specifications of error are urged under two propositions: 1. The indictment does not charge a crime known to the laws of the state. 2. The act, on which the indictment is based is in contravention of the constitution of the state and of the United States.

The title to the act is as follows: " To regulate the employment and provide for the health and safety of men, women and children in manufacturing establishments, mercantile indus-

tries, laundries, renovating works or printing offices, and to provide for the appointment of inspectors, office clerks, and others to enforce the same."

The 1st and 14th sections of the act are the ones alleged to have been violated, and the arguments of counsel have been confined to the consideration of these, viz: "Section 1. That no minor, male or female, or adult woman shall be employed at labor or detained in any manufacturing establishment, mercantile industry, laundry, workshop, renovating works or printing office for a longer period than twelve hours in any day, nor for a longer period than sixty hours in any week." "Section 14. Any person who violates any of the provisions of this act or who suffers or permits any child or female to be employed in violation of its provisions shall be deemed guilty of a misdemeanor and on conviction shall be punished by a fine of not more than five hundred dollars."

Theretofore the offense charged was not indictable; and it is set out in the indictment in the exact words of the act of assembly which created it. The defendants could not have been misled as to the nature of the offense they were called upon to answer. It is sufficient in form under our procedure act of 1860, which requires only a substantial conformity with the act prohibiting the offense and prescribing its punishment.

The title to the act fairly invites an examination of the contents of the bill by all who employ men, women or children in the establishments, industries, works or offices mentioned, and everything which the nature of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of the expressed purpose is sufficiently indicated by the title: Com. v. Jones, 4 Pa. Superior Ct. 362. To regulate the employment and provide for the health and safety of men, women and children in industrial establishments necessarily implies that rules and methods of government, permissive, mandatory and prohibitive, are within the contemplation of the legislature, and an enforced submission to the regulating agencies is implied through the imposition of penalties.

There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction the strictness of which is unnecessary to the accomplishment of the beneficial purposes for which it has been

adopted: Cooley's Const. Lim. 175. The title need not be a complete index to the bill (Mauch Chunk v. McGee, 81 Pa. 433), if it fairly gives notice of the subject of the act so as reasonably to lead into an inquiry into the body of the bill, it is all that is necessary: Allegheny County Home's Case, 77 Pa. 77.

The appellants contend that the act is in violation of the state constitution, article 1, section 1, in that it is an unjust interference with an adult female's right of acquiring and possessing property, and of pursuing her own happiness, and in violation of article 3, section 7, in that it is a special law regulating labor.

It is a matter of history in our state that this act of assembly is the result of extended legislative examination into the management of our varied industrial institutions, which has been conducted by legislative committees, and through our factory and mine inspection bureaus. It is one of a system which has developed in proportion to the growth and prosperity of the state, and when we consider that nearly a million of laborers, men, women and minors, are employed in the industries mentioned in the title of this act, it is apparent that legislation to regulate their employment and provide for their health and safety is an imperative necessity.

By section 2 of the Act of April 21, 1849, P. L. 671, labor performed during a period of ten hours on any secular day in all cotton, woolen, silk, paper, bagging and flax factories shall be considered a legal day's labor, and by a supplement to that Act of May 7, 1855, P. L. 472, no male or female operators under the age of twenty-one years can be employed under any contract in these manufactories for a longer period than sixty hours in any one week or more than an average of ten hours a day during the same period. A progressive step was taken by the Act of June 3, 1893, P. L. 276, by which a new department of the state government was created, namely that of factory inspector. By this act all employers of women or children or either, in any factory, manufactory, mercantile establishment, renovating works or laundry are required to post and keep posted a notice, stating the number of hours per day for each day of the week required of such persons, and the inspector was given visitorial powers over factories, workshops and other establishments employing women and children, and was di-

rected to make report of the number of hands employed in each, with the maximum number of hours of work performed each week. With the light given by the results of the previous legislation on this important subject, the act under consideration was enacted.

By article 16, section 3, our state constitution declares that " the exercise of the police power of the state shall never be abridged." This inherent power of government is vested in the legislature to make such laws as they shall judge to be for the good of the commonwealth, and the exercise of it has been left to the individual states to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety, subject to the power of the courts to adjudge whether any particular law is an invasion of the rights of the constitution: Mugler v. Kansas City, 123 U. S. 623.

The police power of the state is difficult of definition, but it has been held by the courts to be the right to prescribe regulations for the good order, peace, health, protection, comfort, convenience and morals of the community which does not encroach on a like power vested in congress or state legislatures by the federal constitution, or does not violate the provisions of the organic law; and it has been expressly held that the fourteenth amendment to the federal constitution was not designed to interfere with the exercise of that power by the state: Powell v. Penna., 127 U. S. 678; Powell v. Com., 114 Pa. 265. Its essential quality, as a governmental agency · is that it imposes upon persons and property burdens designed to promote the safety and welfare of the public at large. The principle that no person shall be deprived of life, liberty or property, without due process of law, was embodied in substance in the constitutions of nearly all, if not all, of the states at the time of the adoption of the fourteenth amendment, and it has never been regarded as incompatible with the principle, equally vital because equally essential to the peace and safety of society, that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community: Boston Beer Co. v. Massachusetts, 97 U. S. 25.

A prohibition upon unhealthy practices, whether inherently so, or such as may become so by reason of prolonged and ex-

acting physical exertion which is likely to result in enfeebled or diseased bodies, and thereby directly or consequently affecting the health, safety, or morals of the community, cannot in any just sense be deemed a taking or an appropriation of property.

The length of time a laborer shall be subjected to the exhaustive exertion of physical labor is as clearly within legislative control as is the governmental inspection of boilers, machinery, etc., to avoid accidents, or of the sanitary conditions of factories and the like to preserve the health of laborers.

The power to legislate on this subject is inherent in all free governments, and is limited only by the constitution. It must be asserted within reasonable limits, and when we consider that the federal government has fixed eight hours as a day's work for all laborers, workmen and mechanics employed by or on behalf of it (Rev. Stat. sec. 3738), and that our own state has fixed the same number of hours as a day's labor in all of our penal institutions (Act of May 20, 1891, P. L. 100), and for all mechanics, workmen and laborers in the employment of the state, or any municipal corporation therein (Act of July 26, 1897, P. L. 418), and that electric railway companies are prohibited from permitting or suffering any of their employees to work more than twelve hours in one day (Act of March 24, 1887, P. L. 13), and that in all cotton, woolen, silk, paper bagging and flax factories, ten hours of any secular day shall be considered a legal day's labor (acts of 1849 and 1855 above mentioned), it cannot be held to be unreasonable to fix the time of labor for adult females at twelve hours a day or not more than sixty hours a week in the establishments named in this act.

If such legislation savors of paternalism it is in its least objectionable form in that it cares for those who from their own necessities, ambition, or the cupidity of their employees, may be prompted or required to jeopardize their health in unreasonable and dangerous employment, which in the legislative judgment, founded upon statistical experience, injuriously affects their health, and hence the interests of the state itself. It is of the same character of legislation which prohibits the employment of females in or about coal mines, and of minors in trades, etc., which labor arrest or impair the natural development of mind and body. The state at large is

more interested than either employer or employee in preserving that normal physical condition which assures to the individual the most of health and happiness and is least likely to transmit physical, mental or moral defects to succeeding generations. The legislature has adjudged that the health of adult females is imperiled by being employed at labor in the establishments named for a longer time than stated in the act. The adult females, or even the employer, may think otherwise, but self-interest from a financial standpoint is often an unsafe guide. " Though reasonable doubts may exist as to the power of the legislature to pass a law, or as to whether the law is calculated or adapted to promote the health, safety or comfort of the people, or to secure good order, or promote the general welfare, we must resolve them in favor of that department of government: " State v. Holden, 14 Utah, 96 ; 37 L. R. A. 108.

" The legislature has recognized the fact, which the experience of legislators in many states has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are to a certain extent conflicting : " Holden v. Hardy, 169 U. S. 366 ; 42 L. Ed. 780.

The whole argument in this case is based on the injury done to the adult females, whose right to labor as long as they please is alleged to be violated. The remarks of the court in Holden v. Hardy, 14 Utah, 71, are applicable here. " The argument would certainly come with better grace and greater cogency from the latter class. But the fact that both parties are of full age and competent to contract does not necessarily deprive the state of the power to interfere when the parties do not stand upon an equality, or when the public health demands that one party to the contract shall be protected against himself. The state still retains an interest in his welfare, however reckless he may be. The whole is no greater than the sum of all the parts, and when the individual health, safety and welfare are sacrificed, the state must suffer." This declaration was adopted by the United States Supreme Court, in Holden v. Hardy, 169 U. S. 366, 42 L. Ed. 780, in validating a state statute which limited the employment of men in underground mines, smelting works, etc., to eight hours a day.

The object of such legislation is the good of the public as

well as of the individual.   The fact that the individual is will-
ing to waive protection cannot avail.   The public good is en-
titled to protection and consideration; and if, in order to
effectuate that object, there must be enforced protection to the
individual, such individual must submit to such enforced pro-
tection for the public good.   The statute was enacted as a
remedy for such evil: Short v. Mining Co., 45 L. R. A. 603.
In the exercise of its police power the state may enact laws in
the interest of public morals, and to protect the lives, health
and safety of persons following specified callings and may
thus indirectly interfere with the freedom of contract: Lawton
v. Steele, 152 U. S. 133; Com. v. Brown, 8 Pa. Superior Ct. 339,
351.   It is undisputed that some employments may be admis-
sible for males and yet improper for females, and regulations
recognizing and forbidding women to engage in such would
be open to no reasonable objection.   The same is true of young
children whose employment in mines and manufactories is
commonly, and ought always to be regulated.   In addition to
the power to punish misdemeanors and felonies, the state has
also the authority to make extensive and varied regulations as
to the time, mode, and circumstances in and under which parties
shall assert, enjoy, or exercise these rights without coming in
conflict with any of those constitutional principles which are
established for the protection of private rights or private prop-
erty: Cooley's Const. Lim. 745, 6 ed.   It is prerogative of the
the legislature to prescribe regulations founded on nature, reason
and experience in determining the kind of labor, and the length of
time it shall be permitted by either men, women or minors.   Sex
imposes limitations to excessive or long-continued physical labor
as certainly as does minority, and the arrested development of
children is no more dangerous to the state, than debilitating
so large a class of our citizens as adult females by undue and
unreasonable physical labor.   In overruling the demurrer the
court below pertinently said: " Surely an act which prevents
the mothers of our race from being tempted to endanger their
life and health by exhaustive employment can be condemned
by none save those who expect to profit by it."   The complaint
of violated constitutional rights, it will be observed, does not
come from those who are employed, but from those who employ
them.   The proper office of statutes is to remedy the defects

and modify the operation of common-law rules in order to meet changed conditions in society and increased volume and improved methods in business: Com. v. Vrooman, 164 Pa. 306.

In view of our many mining and manufacturing industries the solicitous care of government over the health and safety of the laborers is an important branch of legislative duties. It is not a denial of the right to contract. Labor in the establishments mentioned in the act is permitted, but in the legislative judgment it is not good for the state at large as it now is, and as it is intended to continue, that adult females should labor a greater number of hours than mentioned in the act. If employees, without regard to sex, are required or permitted to perform labor in fixed places where but few of the muscles of the body are used, where the temperature is abnormal, where chemicals are employed and the air is impoverished by, or laden, with noxious gases and impalpable particles, the physical tension and nervous strain consequent upon such employment for an unreasonable time must of necessity produce an appreciable and dangerous effect on the health of the employee so exposed. Adult females are a class as distinct as minors, separated by natural conditions from all other laborers, and are so constituted as to be unable to endure physical exertion and exposure to the extent and degree that is not harmful to adult males; and employments which under favorable conditions are not injurious, are rightly limited as to time by this statute, so as not to become harmful by prolonged engagements.

The conflict of decision on the question of the power to limit contracts between master and servants is marked and it is far from settled. In the interest of public policy in this state the trend of the decisions in Com. v. Brown, 8 Pa. Superior Ct. 339, Com. v. Hamilton Mfg. Co., 120 Mass. 383, Opinion of Justices, 163 Mass. 594, and Holden v. Hardy, 169 U. S. 366, 42 L. Ed. 780, is more likely to furnish better results, and secure greater health to the commonwealth, rather than the class of cases of which Ritchie v. The People, 155 Ill. 98; 29 L. R. A. 79, is most frequently cited.

Class legislation, discriminating against some and favoring others is prohibited; but legislation which, in carrying out a public purpose is limited in its application if within the sphere

of its operation, and which affects all persons similarly situated, is not within the fourteenth amendment: Barlier v. Connelly, 113 U. S. 27, 28 L. Ed. 923; Minneapolis & St. Paul Ry. v. Beckwith, 129 U. S. 26, 32 L. Ed. 585.

The act cannot be said to be a local or special law "regulating labor, trade, mining or manufacturing," in violation of article 3, section 7, when it applies to all adult females alike throughout the state, who are employed in the establishments mentioned in the act.   It relates to and distinctly defines the class of persons affected by it: Wheeler v. Phila., 77 Pa. 338; Durkin v. Kingston Coal Co., 171 Pa. 193; Com. v. Jones, 4 Pa. Superior Ct. 362.   The assignments of error are overruled and the judgment of the court below is affirmed.