## Commonwealth, Appellant, *v.* Immel.

*Fish laws—Pollution of streams—Act of May 29, 1901, sec. 26, P. L.* 302.

The twenty-sixth section of the Act of May 29, 1901, P. L. 302, pro-; vides as follows: "That from and after the passage of this act it shall be unlawful to fish in any waters in this commonwealth with dynamite, nitro-glycerine, torpedoes, electricity, quick-lime, or with any kind of explosive or poisonous substances; or to place such substances in any waters whatever, except for engineering purposes, when written permission has been given therefor by the proper national, state, city or county official or officials." *Held* (1), that the act applied in its prohibition to the deposit in streams of non-explosive substances of a poisonous kind; (2) that the placing of explosive or poisonous substances in a stream need not be directly connected with the catching of fish; (3) that the word "place" did not mean that the poisonous substances must directly pass from the hand into the stream, but contemplated an intentional act proximately connected with the introduction of the poisonous substances into the stream; (4) that in proving the commission of the prohibited act it is not necessary to prove that the accused was impelled thereto by an evil motive to destroy the fish, but he may be convicted by showing that, although engaged in a lawful business, he intentionally discharged poisonous substances employed in his business so that such substances flowed into the stream.

*Constitutional law—Title of act—Fish law—Act of May 29, 1901, P. L.* 302.

The title of the Act of May 29, 1901, P. L. 302, is sufficient to cover the prohibition contained in section 26 of the act, forbidding the placing of explosive or poisonous substances in any waters whatever.

An owner of a dye works who deposits in a stream poisonous substances which destroy the fish therein, may be convicted and punished for violating the provisions of section 26 of the Act of May 29, 1901, P. L. 302.

Argued Oct. 3, 1906.    Appeal, No. 141, Oct. T., 1906, by

plaintiff, from order of Q. S. Montgomery Co., March T., 1906, No. 25, quashing conviction by justice of the peace in case of Commonwealth v. Edmund O. Immel.   Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.   Reversed.

Motion to quash the proceedings on an appeal to the court of quarter sessions from a summary conviction of the defendant by a justice of the peace for placing poisonous substances in the waters of the Commonwealth in violation of section 26 of the Act of May 29, 1901, P. L. 302.

The opinion of the Superior Court states the case.

*Error assigned* was the order quashing the conviction.

*Duane, Morris, Heckscher & Roberts*, for appellant.—To place anything means to put or deposit, and it does seem the most extreme of subtile reasoning to contend that poisonous substances which are drained into or allowed to flow into a stream are not put, placed or deposited into the stream.

The title of the act which is very carefully drawn does in fact contain as specific a reference to section 26 as the most critical student could demand.

But even if the title did not thus specifically refer to the provisions of section 26, it is submitted that the title read as a whole leaves no shadow of doubt as to its object, which is the protection of fish in the waters of the commonwealth : Com. v. Edsall, 13 Pa. Dist. Rep. 509; Arrott Street, 18 W. N. C. 121 ; Com. v. Depuy, 148 Pa. 201 ; Com. v. Jones, 4 Pa. Superior Ct. 362; Com. v. Kebort, 26 Pa. Superior Ct. 584.

*William P. Young*, with him *H. Wilson Stahlnecker*, for appellee.—The two clauses of section 26 declaring the law must be construed together. A literal construction of the second clause, alone and upon its explicit terms, makes it absurd and without any lawful meaning.

The appellee did not "place" any substances in waters of the commonwealth, as contemplated by the act.

Under color of the state's police powers the magistrate cannot

proceed summarily to convict and sentence to six months in jail: Byers & Davis v. Com., 42 Pa. 89.

If manufacturers and others who drain or allow refuse to flow into the waters of the commonwealth are within the provisions of section 26, then said section contravenes article III, section 3, of the constitution.

OPINION BY RICE, P. J., April 15, 1907 :

The defendant was summarily convicted before a justice of the peace of violating sec. 26 of the Act of May 29, 1901, P. L. 302. Upon special allowance he took an appeal to the quarter sessions and upon his motion the court quashed the proceedings before the magistrate, annulled the sentence and discharged the defendant. The court held, in an opinion filed by its learned president judge, " that the defendant's acts are not contrary to the provisions of the section under which he was convicted." The acts referred to by the learned judge are not such as were established by evidence adduced at a trial or hearing in the quarter sessions—for there was no trial or hearing there upon the merits—but the acts alleged in the information and in the evidence adduced before the justice of the peace as shown by his transcript. Briefly stated, the charge in the information was that the defendant unlawfully and willfully placed or discharged into the waters of the commonwealth, to wit: into Deisher's run which empties into the Schuylkill river, " certain poisonous substances consisting of dye substances, bichromate of potassium, sulphate of copper, sulphuric acid and other poisonous combinations of said substances." As shown by the transcript, the evidence given before the justice of the peace relative to the charge was to the effect, that the defendant is the proprietor of the Bramcote Dye Works ; that the " discharge from said works flows into pits and from these pits into Deisher's run ; " that the liquids coming from this place contained poisonous substances, among which were " aniline, chromine, sulphate of copper, chloride of copper, sulphuric acid, hydrochloric acid, and other substances all of which were deadly poison, and would destroy the life of fish or other living beings ; " and that the result was to kill the fish in the stream at and near where the poisonous liquid flows from the defendant's works into the run. For present purposes we must as-

sume that the commonwealth would have been able to establish these facts, if the court, instead of quashing the proceedings, had heard the case upon evidence adduced before it in accordance with the practice recognized as appropriate in appeals from summary convictions.

Section 26 of the act of 1901 reads as follows : " That from and after the passage of this act it shall be unlawful to fish in any waters in this commonwealth with dynamite, nitro-glycerine, torpedoes, electricity, quick-lime, or with any kind of explosive or poisonous substances; or to place such substances in any waters whatever, except for engineering purposes, when written permission has been given therefor by the proper national, state, city or county official or officials. Any person violating any of the provisions of this act shall, on conviction thereof as provided in section 38 of this act, be subject to a fine of one hundred dollars and imprisonment of six months in the county jail."

Before proceeding to a discussion of the main question it will be well to notice the question as to the penalty for violation of this section. Notwithstanding the language of the section is broad enough to cover every violation of the act, there is reason furnished by other sections for holding that for many of the violations of the act the penalty here prescribed does not apply. It is unnecessary, however, to go into any extended discussion of that question, for it is clear that for a violation of this section the penalty is that prescribed therein.

It is contended that the words " to place such substances in any waters whatever " should be construed as applying only to those substances the chemical composition of which is such as to make them both explosive and poisonous. The reasoning in support of this proposition is ingenious but not convincing. The word " such " obviously relates to the two kinds of substances already mentioned, namely, explosive substances and poisonous substances, and cannot be construed to exclude nonexplosive substances of the latter kind.

Another contention is that the substances, whether explosive or poisonous, must be used in connection with the act of fishing; or, as the learned judge below expresses the idea, " the act intends something done or committed, directly connected with the catching of fish, or the result thereof." But the

clause construed in this way would be a repetition of what had already been provided in the preceding clause of the section. The fact that a given construction of a statute would make a sentence or clause superfluous is some reason for the rejection of such construction, and the reason is stronger where the section in which the clause appears is a substantial re-enactment, with this change, of a prior statute upon the same subject which the later statute supersedes and repeals. "The rule which permits a resort to repealed and superseded statutes, in pari materia, is of great importance in the construction of statutes which re-enact, with changes, and repeal former ones, and in that of enactments containing revisions or codifications of earlier laws. As to the former it is obvious that a change of language is some indication of a change of intention:" Endlich on Interpretation of Statutes, sec. 51. The pertinency of these observations is apparent when it is noticed that it is expressly declared in the act of 1901 that one of the acts repealed and intended to be supplied thereby is the Act of June 25, 1895, P. L. 299. That act forbade any person to place in any waters of Pennsylvania any torpedo, giant powder, etc., or any other poisonous or explosive substances "for the purpose of catching or taking fish." The omission of the quoted words from the clause of sec. 26 of the act of 1901 relative to the specific act of placing such substances in the waters of the commonwealth, is significant. A consideration of this omission in connection with the express mention of the exceptional circumstances in which they may be placed in such waters dispels reasonable doubt that the omission was intentional; and this is a conclusive reason why the courts should not add a qualification to the prohibition which the legislature deliberately discarded in revising the law upon the subject. Upon comparison of sec. 26 of the act of 1901 with the act of 1895, which it supplies and supersedes, it will be seen that the former is much broader in its scope than the latter. It prohibits, first, the use of certain substances for the purpose of catching or taking fish, but as that would not fully accomplish the object the legislature had in view, there was added a provision against an act with respect to the same substances, which, though not committed with the specific purpose of taking or catching fish, would be destructive of them.

We cannot agree that this construction of the section brings it into conflict with sec. 3, art. III. of the constitution. In determining whether an act contains more than one subject, regard must be had to the object to be attained. The constitution does not require every end and means necessary or convenient for the accomplishment of one general object to be provided for by a separate act relating to that alone. Provisions, though numerous and diverse, which immediately lead to the accomplishment of that object are cognate to the subject of legislation, and therefore form part thereof: Road in Phoenixville, 109 Pa. 44; Commonwealth v. Jones, 4 Pa. Superior Ct. 362; Commonwealth v. Kenney, 32 Pa. Superior Ct. 544, and cases therein cited. The subject must be clearly expressed in the title, but, as has been declared repeatedly, it is not required by this constitutional provision that the title be a complete index to the contents of the bill, for this would make legislation too difficult and bring it into constant danger of being declared void. If the title expresses the subject so fully and clearly as to give notice of the legislative purpose to those who may be interested therein, and in the specification of the means whereby the general object of the act is to be attained is not deceptive or misleading, it will, in general, be sufficient. The title of the act in question gives notice that the legislation is not confined to wasteful fishing, nor to the regulation of fishing, both of which branches of the general subject are mentioned, but that it relates also to the encouragement of the propagation of food and game fish generally, to the encouragement and regulation of the artificial propagation of them by the state fish commissioners, and to the distribution of the same in the waters of the commonwealth. True, the title does not specify the measures adopted to encourage the propagation of food and game fish, but it is a matter of common knowledge that to prevent the pollution of the waters they inhabit by poisonous substances would tend directly, and as effectively as any measure that can be suggested, to the accomplishment of the object to be attained. Anyone reading the title, and having regard to the subject of legislation expressed therein, would naturally be led to suppose that the act might, and probably would, contain some provision against an act so plainly inimical to the propagation and protection of game and

food fish that inhabit the waters of the commonwealth. To hold that the title is invalid because it does not particularly specify this provision would not be sustained by the interpretation of sec. 3, art. III. of the constitution, which has been generally recognized and followed heretofore, or which is necessary to the accomplishment of the beneficial purpose for which the constitutional provision was adopted. We are of opinion that the title is sufficient, and that the act does not contain more than one subject within the meaning of the constitution.

Upon the question of the interpretation of the word "place" the learned judge below expresses the opinion that it "is to have its ordinary signification, implying a direct act or an act. from which a result would directly flow." If by this is meant that the poisonous substances must pass directly from the hand of the accused or his agent or servant into the stream, we cannot assent to this interpretation of the word. It may be safely assumed, and we so hold, that it contemplates, not every negligent or inadvertent act no matter how remote, but an intentional act proximately connected with the introduction of the poisonous substances into the stream. But in proving the commission of the prohibited act it is not necessary to prove that the accused was impelled thereto by an evil motive to destroy the fish. Intent and motive are two different things, and it is a general rule of frequent application that a sane man is presumed to intend the necessary or the natural and probable consequences of his voluntary acts. If one, though engaged in a lawful business, intentionally, and with ability to forsee the result, discharges poisonous substances employed in his business in such manner and in such close proximity to a stream inhabited by game or food fish that in the ordinary course of things such poisonous substances must and do flow into the stream, the tribunal trying the case would be justified in inferring that he intended the necessary or the natural and probable consequences of his act, and hence that his act was a placing of poisonous substance in the stream within the true intent and meaning of this section of the statute ; and this too although his primary purpose was not to take or to destroy the fish inhabiting the stream.

It follows from the foregoing construction of the section that the court erred in holding that the facts alleged by the

commonwealth as above recited, and the legitimate inference, which in the absence of explanation or countervailing testimony could be drawn therefrom, would be insufficient to sustain a conviction.    Therefore the motion to quash the proceedings before the justice of the peace should have been overruled and the case heard upon such evidence as the commonwealth and the defendant saw fit to adduce.    The record must be remitted for the purpose of a hearing in accordance with the foregoing suggestions.

The order is reversed and set aside and the record remitted with a procedendo.

MORRISON, J., dissents.