## Commonwealth v. Studebaker Touring Car.

*Liquor laws—Seizure of instrument of transportation—Automobile under lease — Bailment lease — Rights of owner — Lawful possession — Act of March 27, 1923—Constitutional law—Police power.*

1. Where an automobile has been seized while unlawfully used in transporting liquor, and it appears that the car was in the lawful possession of a lessee at the time under an instalment lease, under which a number of payments had been made, the bailor or owner is not entitled to repossession of the car, but only to so much of the proceeds of its sale as shall be equal to the unpaid instalments.

2. In such case, the owner cannot set up a claim for possession because a few days after the car had been seized an option of forfeiture had been exercised as provided by the lease. The car had already been forfeited to the Commonwealth.

3. Section 11, B, III, of the Act of March 27, 1923, P. L. 34, 42, which requires a claimant of a car under bailment to look to the proceeds of the sale, is not unconstitutional as violating article i, section 1, paragraph 27, the Constitution guaranteeing the right to acquire possession and protect property. The act is a proper exercise of the police power.

Petition for possession of an automobile. Q. S. Montgomery Co., Sept. Sess., 1923, No. 26.

*J. Burnett Holland,* for Commonwealth.

*Theodore Lane Bean,* for claimant.

MILLER, P. J., Oct. 25, 1923.—Morris Gerstein was discovered by an officer while engaged in transporting unlawfully, on or about July 11, 1923, intoxicating liquor for beverage purposes. He was arrested and the liquor and automobile in which it was being carried were seized. Gerstein afterwards pleaded guilty and was sentenced. The automobile remains in the possession, or under the control, of the district attorney, who has no further use for it for evidential purposes.

On Sept. 4, 1923, Commercial Banking Corporation filed its petition under section 11, D, VI, of the Act of March 27, 1923, P. L. 34, 42, setting forth, *inter alia,* that it was the sole owner of the car, which had been leased by it to Gerstein on July 9, 1923, for a term of one year, with the expressed provision set forth in the lease that it was not to be used for the transportation of intoxicating liquors, and that the petitioner had no knowledge of such unlawful use or at any time approved of, or consented to, the same, and praying for an order that the automobile be delivered to the petitioner. A rule to show cause was granted and by continuance heard on Oct. 10th.

In the meantime, on Sept. 26th, and after the conviction of Gerstein, the district attorney filed the petition of the Commonwealth, under paragraphs I to V, inclusive, of the same sub-division D of section 11 of the act, setting forth that the owner or alleged owner of the car was the defendant, Gerstein, but that Commercial Banking Corporation claimed title to it, and praying that it be adjudged forfeited and condemned and ordered to be sold. To this petition the company filed its answer of the same general purport as its original petition, and both applications came on for hearing at the same time, when testimony was taken in open court and arguments of counsel were heard.

It was shown by the testimony that at the time of the seizure of the automobile in question, it was held and possessed by Gerstein under the bailment lease or contract mentioned, which was then in full force and effect. Commercial Banking Corporation, therefore, held the legal title to it, but Gerstein enjoyed its possession. It was also established at the hearing that its unlawful use by the latter was without the knowledge or consent of the claimant.

4 D. & C.

Two questions arise—the first relates to procedure and the second, depending upon the solution of the first, to the disposition to be made of the automobile.

A careful reading of the Enforcement Act indicates clearly that, so far as procedure is concerned, it was intended to provide for three different situations with reference to a vehicle that had been seized while being used for the transportation unlawfully of intoxicating liquor for beverage purposes. In all, the car has, of course, been discovered in the possession of the defendant. The first is where it is also owned by him; the second is where it is owned by some one else, as, for instance, where it has been borrowed or stolen; and the third is where it is lawfully held and possessed by the defendant under a bailment, with the legal title thereto in another person.

A superficial reading of the whole act might create the false impression that in the case at bar the question of whether proceedings should be had under paragraphs I to V, inclusive, or under paragraph VI, depends entirely upon whether the Commonwealth or the claimant takes the initiative, but its more careful study carries the conviction that the legislature intended to afford the remedy provided by the sixth paragraph only to a claimant who, at the time of the seizure, not only owned, but was lawfully entitled to possession of the car.

This construction is confirmed by the language of the sixth paragraph. The claimant, under it, is required to prove by competent evidence to the satisfaction of the court that the automobile was "*lawfully acquired, possessed and used by him.*" As that which succeeds qualifies this language only as to the *use* of the car, it follows that, unless the claimant establishes both his ownership *and* right to possession, this paragraph does not apply.

What, therefore, are the additional facts relating to this branch of the case? The lease is in writing and valued the car at the time of its execution on July 9, 1923, at $2031.60, which was the aggregate of the rent to be paid. Of this, $677.20 was then paid by the lessee and the balance was made payable in monthly instalments to be secured or evidenced by judgment notes. Title was to remain in the lessor, but possession was immediately delivered to the lessee. In the event of seizure of the car by an officer of the law, the lessee obligated himself promptly to notify that official "that *title* to the said motor-vehicle is in lessor." The eighth paragraph of the lease provides, in part, that "the said lessee shall not, until said rent and other charges are fully paid and a bill of sale given by the lessor, . . . use or permit said motor-vehicle to be used . . . for the transportation of intoxicating liquors or spirits or for any unlawful purpose, and any . . . use of said motor-vehicle . . . for the transportation of intoxicating liquors or spirits or for any unlawful purpose shall, at the option of the lessor, constitute a forfeiture of the rights of the lessee under this agreement."

Subsequent paragraphs of the lease provide that upon violation by the lessee of his agreement, the entire unpaid balance of rent shall become due and payable and the lessor may retake possession of the car and for other concurrent or cumulative remedies or relief to it. But the outstanding facts are that when this automobile was seized, though title to it, on the face of the transaction between the claimant and Gerstein, was in the former and possession was in the latter, it was virtually a new car, which had cost, so recently as July 9th, $2031.60, of which $677.20 had been advanced by Gerstein, and the lease was in full force and operation as between the parties to it. In other words, Gerstein had a substantial pecuniary investment in the automobile.

The Commonwealth contends that by reason of its unlawful use the car is absolutely forfeited. The claimant urges that, for the same reason, it is entitled to have it delivered over to it under the forfeiture clause in the lease. We can follow the reasoning of neither. If the Commonwealth prevails, the claimant is done a manifest wrong. If, to the contrary, the latter receives the car, the Commonwealth is deprived of the substantial interest of Gerstein in it and the forfeiture which the law declares in favor of the public would then really enure to the exclusive advantage of the claimant. If the latter's contention is sound, it would apply to a case where all the rent has been paid and the bill of sale only remained to be executed. This cannot be.

As we understand the law and the reason which lies back of it, the situation which confronts us here is intended to be taken care of by that portion of section 11, B, III, which requires the claimant under a bailment to look to the proceeds of sale rather than to the car itself. The rights of both the Commonwealth and the claimant can then be protected in distribution. The claimant is entitled to money, not to the automobile, as we understand the law and the reason which lies back under its contract.

Our attention has not been directed by counsel to any Pennsylvania case in point, and our own independent investigation of the authorities has failed to disclose any such. The Enforcement Act was passed less than six months ago, and this may account for the entire absence of decided cases which might have been helpful in their reasoning and persuasive in their conclusions. However, the Enforcement Act seems to have been drafted, and we understand it to be, in harmony, in principle at least, with national prohibition legislation and the decisions under the latter. In construing the Act of Congress, it has been held, for instance, that a *bona fide* vendor or mortgagee, without having any notice that the vehicle was being used or was to be used for the illegal transportation of intoxicating liquor, should be protected to the amount of his *bona fide* lien, as far as possible.

"When a defendant is arrested for transporting intoxicating liquor, and the vehicle is seized, what is to be done with it depends upon what interest the defendant has in it. If he has no interest—that is, if he had stolen it, or had borrowed it from its real owner, who neither knew nor could be presumed to have knowledge of the illegal purpose for which it was to be used—manifestly the wrongdoer had no interest to forfeit, and it logically follows, under the provisions of the act, that the vehicle should be returned to the rightful owner by order of court. If, on the other hand, the wrongdoer had an interest in the vehicle, his interest should be confiscated and the vehicle ordered sold:" United States v. Sylvester (D. C. Conn., 1921), 273 Fed. Repr. 253.

The relative burdens of proof of an owner and lienor of the car in such a case are discussed in United States v. Montgomery et al., 289 Fed. Repr. 125, and the distinction between their respective positions is drawn in United States v. Bostick, 289 Fed. Repr. 127, and United States v. Torres, 291 Fed. Repr. 138.

In the case at bar, and because of the expressed provision of section 11, B, III, of the Enforcement Act, we are, therefore, inclined to hold that while this claimant may technically be the owner of the automobile in question, its right, if any, to protection under the circumstances is analogous to that of a lienor under the national act; in other words, it is not entitled to delivery of possession of the car, but must hereafter establish its right to participate in the distribution of the proceeds of its sale. And we have no hesitancy in so holding in this case because of the testimony of the president of the claimant corporation to the substantial effect that, notwithstanding the documentary

evidence in the case, the relation between the claimant and Gerstein was actually that of creditor and debtor.

There are two other matters that require some comment.

A few days after the automobile had been seized and when it was in the custody of the officers of the law, it is contended that the claimant exercised its option of forfeiture under the eighth paragraph of the lease. We are not impressed by this contention. The testimony leaves the question seriously in doubt whether the claimant itself ever did anything in this connection, and that of its attorney, who appeared as a witness, is not so clear as it might have been. Whatever was done, however, was done by him in a conversation with Gerstein, and whether or not, as between the claimant and Gerstein, it was effective, it could not affect the right of the Commonwealth. The car was already forfeited, at least so far as Gerstein's interest in it was concerned, and in the custody of the law. It was then too late for the claimant to change the status, which became fixed as of the time of the seizure.

The second of these matters is the question of the constitutionality of that portion of section 11, B, III, which relates to bailments. Our first thought in this connection is that the claimant is not in a position to raise the question. This part of the act was inserted for the protection of a bailor. It can attend the sale and bid to protect its own interests. It is within its power thereby to obtain either the car or its money in full. The maximum of its enforced disadvantage is, therefore, the costs of sale, which must be incurred in order to raise the fund. The weakness of its argument in this behalf lies in the assumption, which may be unfounded, that the car will be sold to a stranger for less than the costs of sale and the amount due the claimant. Moreover, if that portion of section 11, B, III, now under consideration is unconstitutional, a bailor appears to be without remedy at all, because, as we have found already, it is without redress under section 11, D, VI.

The contention is that section 11, B, III, offends against article I, section 1, par. 2, of the Constitution, which guarantees the inherent and indefeasible rights of acquiring, possessing and protecting property, and it has been held (Durkin v. Kingston Coal Co. et al., 171 Pa. 193) that a statute which imposes upon a person a liability to answer for the acts and engagements of strangers, over whom he has no control, violates this provision of the Constitution and is unconstitutional and void.

But this clause is not violated by an act passed in the proper exercise of the police power: Com. v. Baxter, 23 Pa. C. C. Reps. 270; Com. v. Leber, 4 Lacka. Jurist, 298; Harrison v. Com., 123 Pa. 508; and the State may enact laws in the interest of public morals and to protect the lives, health and safety of persons following specific callings, and may thus indirectly interfere with the freedom of contract: Com. v. Beatty, 15 Pa. Superior Ct. 5.

In an opinion that already is too long, we are not inclined to say more on this subject involved, complicated and, to some extent at least, unsettled as it appears to be. After careful study of it, we hold that the portion of the act now under consideration does not violate the paragraph of the Constitution mentioned, and is a valid exercise by the State of its police power. The proceeding itself is in rem. The automobile is forfeited. The State's right to forfeit takes priority over an innocent lessor. If, after the whole matter is ended, the claimant finds itself injured, it must obtain redress from Gerstein, but it is its own fault that it has leased the car to a person who has used it in defiance of the law. Since the very foundation of the police power is the control of private interests for the public welfare, a statute or ordinance is not rendered unconstitutional by the mere fact that private rights of person

or property are subjected to restraint or that loss will result to individuals from its enforcement: 12 Corpus Juris, 931.

We have considered this case, which is one of first impression, with some care.. Its importance is fully realized. The purchase of many motor-vehicles is financed by corporations like the claimant and others.

In Pennsylvania, the method usually adopted for securing repayment of the money advanced is by bailment contract.

The Enforcement Act adds, in our opinion, a new and great hazard to this business. This hazard may be reduced by the exercise of greater care in the acceptance of risks, by taking indemnity or otherwise. It cannot be entirely escaped. The only remedy of the *bona fide* bailor is to look to the proceeds of sale of the car. It cannot obtain a delivery of the car itself.

This law is a wise one, and, as already stated, the forfeiture of the conveyance may at times prove to be the severest penalty imposed for its violation. We are not prepared to hold, until required to do so, that confiscation of the motor-vehicle may be effectually prevented by inserting in the lease a covenant by the lessee not to transgress the law, carrying with it the power in the lessor to declare a forfeiture for a violation of the covenant, especially where, as here, that power was not sought to be exercised until after the car had been seized by the authorities and its status had become fixed. To so hold would, in our opinion, set a premium on fraud—would encourage scheme to circumvent the law.

The petition of the claimant is refused and that of the Commonwealth granted, and appropriate orders will be entered thereon. We have purposely refrained from commenting on the question of the method of distribution of the proceeds of sale. It now is not before us.

From Aaron S. Swartz, Jr., Norristown, Pa.