## Blood *et al. versus* Mercelliott *et al.*

1. " An act to increase the boundaries of Forest county," provided for extending the borders of the county, locating the seat of justice, and accepting donations for the public buildings. *Held* not to be contrary to article 11 § 8 of the constitution, either as to its title or as containing more than one subject-matter.

2. The change of a county seat is within the power of the legislature.

APPEAL from the decree of the Court of Common Pleas of *Forest county*. In Equity.

[Blood *v.* Mercelliott.]

On the 11th of April 1848, Forest county was erected, and on the 20th of May 1857 it was organized for judicial purposes, the village of Marien being fixed as the seat of justice. Public buildings for courts, &c., were built and occupied for the public purposes of the county. On the 31st of October 1866, an act, entitled " An act to increase the boundaries of Forest county," was passed. By it part of Venango was added to Forest, and commissioners appointed to run and mark the lines, and also to relocate the county seat, and the county commissioners were authorized to receive conveyances of such lots as the commissioners to lay out the county might designate for public buildings, and receive donations towards the expense of their erection. The commissioners ran and marked the line, located the county seat at the village Tionesti, and selected a site for the public buildings.

K. L. Blood and others thereupon filed the bill in this case, setting forth the foregoing facts, and that they and the ancestors of some of them had given to the county of Forest land in the village of Marien for erecting public buildings, which had been in part disposed of for the use of the county.

The bill charged that the defendants, M. P. Mercelliott, the prothonotary, &c., and the county commissioners, were about to remove the records to Tionesti, and to accept conveyances of land for the public buildings, &c.

The bill further charged that the Act of October 31st 1866 was unconstitutional, as containing more than one subject, and because the subjects were not clearly expressed in the title ; and also that it would be contrary to equity to remove the seat of justice from Marien after having accepted the donations mentioned in the bill.

The defendants demurred to the bill, and, after hearing, the court below (Campbell, P. J.) dismissed it. The complainants appealed, and assigned the decree dismissing the bill for error.

*W. P.* and *G. A. Jenks,* for appellants.

For the appellees (whose paper-book was not signed) were cited Fletcher *v.* Peck, 6 Cranch 87 ; Commonwealth *v.* Smith, 4 Binn. 123 ; Moore *v.* Houston, 3 S. & R. 178; Eakin *v.* Raub, 12 Id. 339 ; Sharpless *v.* Mayor, 9 Harris 164.

The opinion of the court was delivered, May 13th 1867, by

READ, J.—It appears that, in pursuance of an Act of 11th April 1848, a new county was erected out of certain territory formerly part of Jefferson county, called Forest county, and the commissioners named in said act ran the lines of said new county and located a site for the seat of justice thereof at the village

of Marien, where the public buildings are erected; and on the 20th May 1857, another act was passed organizing the said county of Forest for judicial purposes.

The legislature, on the 31st October 1866, passed "An act to increase the boundaries of Forest county," and also "A supplement" thereto, by which certain territory in Venango county was attached to and made part of the county of Forest. The commissioners who were authorized to run and mark the lines of the said county of Forest, were also authorized, as soon as they shall have completed a survey of the boundaries mentioned in the 1st section of the act, to relocate and fix the county seat of said county of Forest, and the commissioners of the county were authorized to take assurances to them and their successors in office of such lot or lots of ground as may have been designated by the commissioners authorized to locate the county seat, for the purpose of erecting thereon a court-house, jail and offices for the safe keeping of the records. The county commissioners were also authorized to receive by subscriptions or donations, money and materials towards defraying the expenses thereof, and for building a court-house and prison, or so much as may be needful to supply deficiencies in case there shall not be sufficiency given and subscribed as aforesaid, which court-house and prison they are authorized to erect.

The plaintiffs allege that this act is unconstitutional because, 1. It contains more than one subject. 2. The title of the act does not clearly express the subject contained in it. The question, therefore, involves the construction of the 8th section of the 11th article of the Constitution, being the second amendment of 1864, which is in these words: "No bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills."

Such a provision, in the same or different words, is to be found in the constitutions of other states. In New Jersey, in article 4, section 7, paragraph 4 of the constitution, it is in these words: "4. To avoid improper influences which may result from intermixing in one and the same acts, such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title." "The design of this provision is declared to be to prevent improper influences which may result from intermixing in one and the same act such things as have no proper relation to each other. The objects in that statute are parts of the same enterprise, and cannot be said to have any improper relation to each other:" Gifford v. New Jersey Railroad Co., 2 Stockton (N. J. Ch. R.) 177. In Iowa, the constitution requires that "every law shall embrace but one object, which shall be expressed in its title." In Morford v. Unger, 8 Clarke 86, the Supreme Court of that state said: "The object expressed in

this instance was to amend the act incorporating the city. With this object, was consistent the purpose of enlarging the limits of the city. These limits were fixed by the act sought to be amended, and an alteration of them was one of the modes in which the act was subject to amendment. The general purpose was well expressed by entitling the act ' An act to amend the act to incorporate the city of Muscatine,' and as entirely in consonance with such purpose we think it was legitimate in the legislature to extend the limits of the city or engraft any other provision not entirely inconsistent with the purpose of amending the charter then in force." " It is urged," said the Supreme Court of Indiana, " that the act embraces more than one subject, that it embraces provisions of civil and criminal law." The courts " can only ask does the title of the act which may be brought in question embrace but a single subject, and are the provisions upon that subject *or upon matters properly connected with it.* We are further satisfied we cannot say, simply because the sections found in the act may be some of them civil and some penal in their character, that they are upon two subjects:" Thomasson *v.* The State, 15 Indiana 455. See Chiles *v.* Drake, 2 Metcalf (Kentucky) Rep: 150.

The fact that *giving* is made an offence in the body of the act, whilst the title prohibits the sale, does not render the act unconstitutional under section 17 of article 3 of the Constitution, which. provides that " every law enacted by the legislature shall embrace but *one subject,* and that shall be *described* in the title :" Parkinson *v.* The State, 14 Maryland Rep. 185. In this case the court said : " It cannot be doubted that this restriction upon the legislature was designed to prevent an evil which had long prevailed in this state as it had done elsewhere, which was the practice of blending in the same law subjects not connected with each other and often entirely different. This was not unfrequently resorted to for the purpose of obtaining votes in support of a measure which could not have been carried without such a device. And in bills of multifarious character, not inappropriately called omnibus bills, provisions were sometimes smuggled in and passed in the hurry of business toward the close of a session, which if they had been presented singly would have been rejected." " In Davis *v.* The State, 7 Md. Rep. 160, this court has very clearly expressed what is understood to have been the evil which was designed to be corrected by this restrictive provision of the Constitution. We do not think it should be so construed as to render the present law unconstitutional in any of its provisions. If the strict interpretation insisted upon in argument should be adopted, some portions of many of the acts which have been passed will be rendered null and void :" Id. 193.

In The Sun Mutual Insurance Co. *v.* The Mayor, &c., of New

[Blood *v.* Mercelliott.]

York, 4 Selden (8 N. Y.) 253, the Court of Appeals said: " There must be but one subject, but the mode in which the subject is treated or the reasons which influenced the legislature, could not and need not be stated in the title, according to the letter and spirit of the Constitution. I think this law is addressed to a single subject, and that is expressed in the title. Whether the description of the subject might not, with propriety, be more specific, it seems to me is a question for the legislature rather than the courts. The purpose of the 16th section was that neither the members of the legislature nor the public should be misled by the title:· not that the latter should embody all the distinct provisions of the bill in detail."

So the title of a private act sufficiently expresses its subject within article 3, section 16, of the Constitution by the words " An act for the relief of I. L." It need not indicate the steps by which such relief is to be effected, *e. g.*, the assessment and collection of a tax by a municipal corporation : Brewster *v.* City of Syracuse, 5 Smith (19 N. Y.) 116. The act before us is not open to the objection that it is an *omnibus* bill and blends in the same law subjects not connected with each other or entirely different. Nor could any improper influence result from combining the provisions contained in it, for the objects in it are parts of the same enterprise, and neither the legislature nor the public would be misled by the title. The subject of the act was the enlargement of the county, by the addition of new territory, and this naturally included a relocation of the county seat. If this could not be done in one act, then two acts must have been passed, one to enlarge the county and the other to locate the county seat. If it had been the erection of a new county, then provision must have been made for the county seat, and this shows the two provisions form but one subject, or rather are parts of the same subject.

We have, therefore, no difficulty in holding that this law and the title of it are constitutional. The change of a county seat is entirely within the power of the legislature.

Decree affirmed, at the costs of the appellants.

WOODWARD, C. J., dissented.