# Commonwealth, Appellant, *v.* Hazen.

*Constitutional law—Title of act—Blooming Grove Park Association—Act of March* 23, 1871, *P. L.* 441—*Killing deer.*

The act of March 23, 1871, entitled " An act to incorporate the Blooming Grove Park Association," is not unconstitutional as defective in title. The title of the act gives notice of the intention to maintain a park. The word " park " indicates a purpose to do those things which are included in the broadest definition of a " park." Adequate protection by expressed provisions preventing and punishing tortious and predatory acts, such as killing deer may reasonably be expected to form a part of the legislation providing for the maintenance of a " park."

The original meaning of the word " park " in the law was a tract of enclosed land stocked with wild beasts of the chase, enjoyed by the owner through royal grant or by immemorial prescription. In this definition a " park " is distinguished from a " chase " by the fact that the latter is not enclosed.

Where the constitutionality of a provision of a statute involves the meaning of a word, if any meaning whether popular or technical will sustain the exercise of the power, it is sufficient. If the strict and legal meaning has the effect of limiting or destroying while some other popular acceptation of the word will support the legislative act, the latter must be resorted to. The popular sense of a technical word, if it has a popular sense broader than the technical one must be adopted, if the effect be not to limit or restrain the general grant of power.

All the presumptions are in favor of the constitutionality of statutes, and courts are not to be astute in finding or sustaining objections to them.

*Constitutional law—Bill of rights—Law of the land—Killing deer—Blooming Grove Park Association.*

Inasmuch as the provisions of the act of March 23, 1871, entitled " An act to incorporate the Blooming Grove Park Association," enure to the advantage of the public in the protection of forests and game, a person may be summarily convicted of the predatory acts forbidden in sections 16 and 17 of the act. These sections are constitutional and within the sovereign and police power of the state.

*Justice of the peace—Summary conviction—Appeal—Certiorari.*

On an appeal from an order of the court of quarter sessions quashing a summary conviction before a justice of the peace, the Superior Court will reverse the judgment where there is sufficient in the transcript of the justice, the petition for appeal, the motion made to discharge, and the terms of the order of the court, to convict the court below of error in law.

Argued Jan. 20, 1902.   Appeal, No. 29, Jan. T., 1902, by

plaintiff, from order of Q. S. Pike Co., Oct. T., 1900, No. 6, quashing summary conviction in case of Commonwealth v. Charles Hazen. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Appeal from summary conviction.

The facts are stated in the opinion of the Superior Court.

The court below, in an opinion by PURDY, P. J., quashed the conviction and discharged the defendant.

*Error assigned* was the order of the court.

*W. S. Kirkpatrick,* with him *D. M. Van Auken,* district attorney, and *C. W. Bull,* for appellant.—All presumptions are in favor of the constitutionality of an act of assembly: Craig v. First Presbyterian Church, 88 Pa. 46 ; Sharpless v. Mayor of Philadelphia, 21 Pa. 164.

From the earliest traditions the right to reduce animals ferae naturae to possession has been subject to the control of the law-giving power: Rexroth v. Coon, 15 R. I. 35 ; 23 Atl. Repr. 37.

The title of the act being "An act to incorporate the Blooming Grove Park Association," sufficiently indicates that it relates to a corporation for purposes of a park according to the legal and proper definition of that term : Com. v. Beatty, 15 Pa. Superior Ct. 13 ; In re Road in Phœnixville, 109 Pa. 44; Blood v. Mercelliot, 53 Pa. 391 ; Com. v. Lloyd, 2 Pa. Superior Ct. 6 ; Washington Boro. v. McGeorge, 146 Pa. 248; Com. v. Jones, 4 Pa. Superior Ct. 368 ; Com. v. Charity Hospital of Pittsburg, 198 Pa. 275 ; Com. v. Sellers, 130 Pa. 32.

The law books are full of decisions to the effect that trial by jury does not apply to such cases as this : Johnson v. Barclay, 16 N. J. L. 1 ; McGear v. Woodruff, 33 N. J. L. 213 ; Ex parte Schmidt, 24 So. Car. 363 ; Inwood v. State, 42 Ohio, 186; Flint River Steamboat Co. v. Foster, 5 Ga. 194; Williams v. City Council of Augusta, 4 Ga. 509.

*C. N. Willard,* of *Willard, Warren & Knapp,* with him *Harry T. Baker,* for appellee.—The word "park" in the title does not make a park, and in the absence of any inclosure it never was a park, under any definition contained in appellant's argument or in any published standard dictionary.

The act is unconstitutional as defective in title: Com. v. Muir, 1 Pa. Superior Ct. 578; Com. v. Moore, 2 Pa. Superior Ct. 162; Com. v. Lloyd, 2 Pa. Superior Ct. 6; Com. v. Jones, 4 Pa. Superior Ct. 362; Com. v. Curry, 4 Pa. Superior Ct. 361; Com. v. Beatty, 15 Pa. Superior Ct. 5; Road in Phoenixville, 109 Pa. 44; Rogers v. Manufacturers' Imp. Co., 109 Pa. 109; Com. v. Frantz, 135 Pa. 389; Pierie v. Philadelphia, 139 Pa. 573; Philadelphia v. Ridge Ave. Ry. Co., 142 Pa. 484.

The act is in violation of the bill of rights: Norman v. Heist, 5 W. & S. 171; Brown v. Hummel, 6 Pa. 87; Greene v. Briggs, 1 Curtis C. C. 314; Fetter v. Wilt, 46 Pa. 460; Craig v. Kline, 65 Pa. 399; Hoke v. Henderson, 4 Devereux's Law, 1; Murray v. Hoboken Land, etc., Co., 18 How. 272; Holden v. Hardy, 169 U. S. 366; 18 Sup. Ct. Rep. 383; State v. Julow, 129 Mo. 163; 31 S. W. Repr. 781; Wynehamer v. People, 13 N. Y. 378; Gordon v. Winchester Building Assn., 12 Bush. 110; City of Shreveport v. Levy, 26 La. Ann. 671; State v. Indianapolis, 69 Ind. 375; Eames v. Savage, 77. Me. 212; Jacob's Application, 98 N. Y. 98.

There is nothing before the Superior Court upon which a reversal may be based: Thompson v. Preston, 5 Pa. Superior Ct. 157; Northampton County Commissioners' App., 57 Pa. 452; Com. v. Gillespie, 146 Pa. 546; Dolan's App., 108 Pa. 564; Sadsbury Twp. Roads, 147 Pa. 471; Hamilton St., 148 Pa. 640; Benzenhoefer's App., 154 Pa. 547; Plunkett's Creek Twp. v. Fairfield Twp., 58 Pa. 209; Giddings's App., 81* Pa. 72; Road in Upper Dublin Twp., 94 Pa. 126; Darby v. Sharon Hill, 112 Pa. 66.

OPINION BY WILLIAM W. PORTER, J., July 10, 1902:

The defendant was arrested, at the suit of the commonwealth, for killing a deer on the domain of the Blooming Grove Park Association, in Pike county, Pa. The complaint was heard by a justice of the peace and a fine and costs imposed by virtue of the provisions of the act incorporating the association. Failing to pay, the defendant was committed to the county jail. An appeal was taken and at the hearing in the court below, evidence was received on the part of the prosecution. No evidence was submitted by the defendant. The court quashed and set aside the proceedings, and discharged the

defendant on the ground that the legislation, under which the proceedings were had, was unconstitutional. This legislation is contained in the act of March 23, 1871, entitled: "An act to incorporate the Blooming Grove Park Association." It contains numerous provisions. The court below seems to subject the entire act to adverse criticism, although disclaiming any intention to hold it unconstitutional beyond the necessities of the pending cause. The appellee attacks but two parts of the act, namely, section 16 and paragraph 4 of section 17, which are as follows:

"Section 16. All persons are forbidden to enter in or upon, or to hunt, shoot or fish in or upon the lands or waters owned, hired or leased by said corporation, or over or upon which they have acquired the right to shoot, fish or hunt, on any part thereof, unless authorized to do so by said corporation; and any person who shall be found guilty of violating the provisions of this section shall be deemed guilty of a misdemeanor, and shall be fined not less than $10.00, or not more than $50.00, in the discretion of the judge, court or magistrate before whom he shall be tried, for the first offense, and shall be fined not less than $20.00, and not more than $100, for each additional offense; the provisions of this section, however, so far as they relate to lands or waters not belonging to said corporation, but over which they shall acquire the right to shoot, fish or hunt, shall not apply to the owners of such premises so far as their own lands or waters are concerned."

Section 17, paragraph 4 provides: "Any person who shall, without permission as aforesaid, kill any deer or four-footed other animal (except hares and rabbits, and other smaller animals) upon the property owned by said corporation, or over which it shall have the right to shoot, fish or hunt, having signs or placards as aforesaid, shall forfeit the sum of $40.00 for each offense."

These provisions are alleged to be unconstitutional, first, because in violation of the amendment of 1864 to the constitution of 1838, which provides: "That no bill shall be passed by the legislature containing more than one subject which shall be expressed in the title, except appropriation bills." This provision is similar to section 3 of article 3 of the constitution of 1873.

The first question to be determined, then, is whether the subject of the act incorporating the Blooming Grove Park Association is expressed in its title.    It should be noted that the appellee asserts that the act has no sufficient title and that he does not contend that the title contains more than one subject. It has been recently said that " it may not be lost sight of that the attitude of the courts is not one of hostility to acts whose constitutionality is attacked.    On the contrary, all the presumptions are in their favor and courts are not to be astute in finding or sustaining objections :"    Sugar Notch Borough, 192 Pa. 355.    It has long and often been held that the violation of constitutional provision must be clear and such as to leave no doubt or hesitation in the judicial mind : Sharpless v. Mayor of Philadelphia, 21 Pa. 164; Craig v. First Presbyterian Church, 88 Pa. 46 ; Commonwealth v. Beatty, 15 Pa. Superior Ct. 5 ; Cooley's Constitutional Limitations, 175.    The rule of liberal construction has been applied to the constitutional provision under consideration.    " The course of decision in this court has been intended to carry out the true intent of the amendment of 1864 as to title and subject of bills, instead of resorting to sharp criticism, which must often bring legislation to naught. The amendment of 1864 was in substance proposed in the constitutional convention of 1837–1838, and rejected, because it was feared it would render legislation too difficult and uncertain and lead to litigation.    It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title as it comes before us, a reasonable interpretation, ut res magis valeat quam pereat.    If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary.    It need not be an index to the contents, as has often been said " : Allegheny County Home's Appeal, 77 Pa. 77 ; Blood v. Mercelliott, 53 Pa. 391 ; State Line and Juniata R. R. Co.'s Appeal, 77 Pa. 429.    Approaching a discussion of the subject before us in the spirit and under the guidance of the judicial precedents referred to, we may inquire whether the sections, quoted above, are to be excised because unconstitutional by reason of alleged defect in the title of the act.    What does the title express?    Manifestly (1) the purpose to erect a corporation.    (2) The name " Blooming Grove " (being that

of a township in Pike county, where the persons seeking incorporation were owners of lands, as appears by the charter) furnishes suggestion of the location where the intended corporation proposed to exercise its franchise. (3) The title indicates beyond cavil that the object of the incorporation is the maintenance of a "park." The subject of the act, therefore, was the maintenance of a "park" in an indicated locality by a corporation. The stress of the argument against the constitutionality of the aforesaid provisions of the act is laid upon the alleged failure to give notice by the title that provisions imposing penalties for certain tortious acts, were contained in the enactment. The title gave notice that a "park" was to be maintained, and was sufficient to challenge inquiry and invite inspection on the part of legislators and of parties in interest, as to the provisions for the carrying out of the general purpose, indicated by the title.

The word, "park," has several popular meanings. Some of them may be suggested, since where the constitutionality of a provision involves the meaning of a word, if any meaning, whether popular or technical, will sustain the exercise of the power, it is sufficient. If the strict and legal meaning has the effect of limiting or destroying, while some other popular acceptation of the word will support the legislative act, the latter must be resorted to. The popular sense of a technical word, if it has a popular sense broader than the technical one, must be adopted, if the effect be not to limit or restrain the general grant of power: Commonwealth ex rel. Wolfe v. Butler, 99 Pa. 540.

The word, "park," is popularly used to describe restricted pieces of land in large cities, maintained at public expense, improved and made attractive by the cultivation of herbage, trees, and, occasionally, by the exhibition and propagation of domestic and wild animals. The word is also descriptive of larger tracts of suburban land improved and maintained similarly. Occasionally, such suburban parks are maintained for public enjoyment by private corporations or individuals, with an eye to direct or indirect profit. In all of these cases, the use of the word "park" is indicative of the purpose to preserve land in a state akin to that of nature; to improve it and to use it for the cultivation of plants, or the exhibition of animal nature. The

word, " park," is also descriptive of tracts adjacent to a mansion or private residence and suggests the cultivation and adornment of land by plant and animal life.   The word is also descriptive of a large area of country containing natural curiosities, withdrawn from settlement and reserved by government for public enjoyment, as in the case of a national park, the maintenance of which peculiarly includes the preservation and propagation of game and fish.   The original meaning of the term in the law was a tract of enclosed land, stocked with wild beasts of the chase, enjoyed by the owner through royal grant or by immemorial prescription.   In this definition a " park " is distinguished from a " chase " by the fact that the latter is not enclosed.   But this technical distinction is in this country not popularly maintained.   The idea of the maintenance and propagation of wild beasts, however, still clings, in greater or less degree, to the word " park."   That which was to be maintained under the charter of the Blooming Grove Park Association was a " park " comprehended by the common-law definition, shorn of the obligation to physically enclose, although to be constructively enclosed by the use of warning signs posted upon the property.   The use of the word " chase " might under the ancient definition have been more exact, but this word has found no lodgment as a popular descriptive term in this country.   It is alleged as a fact by the appellee that much of the domain of the Blooming Grove Park Association is not physically enclosed.   Upon this, it is asserted that it cannot be brought within the common-law definition of a " park."   Inspection of the " objects " of the corporation shows that they are the preservation, importation, breeding and propagation of game, animals, birds and fishes adapted to the climate ; the affording of facilities for hunting, fishing and shooting on the grounds thereof by the members thereof, or by persons licensed by said corporation ; the supplying of spawn of fish, or young fish, game, animals or birds, to other associations or persons ; selling such surplus of game, animals, birds or fish as may be killed; caught or taken on its property ; cultivating forests ; and to provide its stockholders and others with an agreeable resort, etc.   These objects are included in the conception of a " park." The title manifestly is adequate to give notice of the purposes of the act as expressed in the body of the act.

Every conception of the word "park" includes the idea of a place where care, attention and money are to be expended in the cultivation and protection of forests, trees, and (coupled with the legal definition) in the propagation and preservation of wild animal life. It includes also the idea of benefit, direct or indirect, to others than the private owner, as in the charter before us where (by expression of purpose) is included the furnishing of spawn and young game to other associations and persons, and particularly, the cultivation of forests. The maintenance of a "park" requires protection by law, suitable and sufficient. Particularly is legislative protection necessary to possessory rights in feræ naturæ, unkilled and unsubdued, since the matter of title thereto is by no means clear in Pennsylvania. But the prevailing view is indicated in Geer v. Connecticut, 161 U. S. 530, to be that the state has the power to control and regulate the killing of game and its ownership. The destruction of rare trees, plants and flowers, or the taking of the life of a deer, or other animal, would certainly be acts properly punishable by criminal process. The use of the word "park" suggests the necessity for such protective provisions. Everything which the nature of the subject of the title of an act reasonably suggests as necessary or appropriate for the accomplishment of its expressed purpose, is sufficiently indicated by such title: Commonwealth v. Jones, 4 Pa. Superior Ct. 368; City of Pittsburg v. Daly, 5 Pa. Superior Ct. 528; Overseers of the Poor of Boggs Township v. County of Armstrong, 11 Pa. Superior Ct. 175. This branch of the case may be summed up thus: The title of the act gives notice of the intention to maintain a park. The word "park" indicates a purpose to do those things which are included in the broadest definition of a "park." Adequate protection by expressed provisions preventing and punishing tortious and predatory acts, might reasonably be expected to form a part of the legislation providing for the maintenance of a "park."

The learned court below seems to hold the view that the summary conviction of the defendant before a justice was in violation of the right of trial by jury. This position is not urged by the appellee in support of the conclusion of the court below and need not be discussed. See Van Swartow v. Commonwealth, 24 Pa. 134.

The second position taken by the appellee is that the conviction of the defendant was in violation of the bill of rights. It is contended that the defendant cannot be deprived of his liberty unless by " the law of the land ; " that the provisions of the act under review are for the sole benefit and protection of a private corporation and are not such general provisions as make them the law of the land. It will not be asserted that a provision prohibiting the destruction of fish and game within the boundaries of the commonwealth during certain seasons, or even for extended periods of time, would be either outside the police power of the state, or other than law of the land, or that summary convittion for violation of such law would be in contravention of constitutional provision. The force of the appellee's argument, if force it has, lies in the assertion that the provisions of the act are for the sole benefit and protection of the Blooming Grove Park Association. Beyond doubt the provisions do operate to the advantage of the corporation named, in protecting it in the exercise of its franchise. But to the corporation the advantage is not limited. The legislation upon the statute books of the commonwealth leaves no room to doubt that the protection of fish, game and forests, is to the public benefit, at least in the legislative mind. Numerous acts have been passed to furnish such protection. These have even encroached upon the right of the private owner to take fish and game upon his own premises. It may be safely asserted that legislation, which looks to the preservation and propagation of game and fish and to the protection and cultivation of forests, is for the public benefit. In the act before us, the accomplishment of the purposes indicated in the charter, does not result solely in benefit to the private corporation. The public has an interest in the protection of forests upon the lands of the corporation and in the protection and propagation of fish and game by the corporation. The supplying of spawn and young game to other associations and persons, is, at least in part, for the public benefit, since it results in increase of the fish and game and their distribution over a more extended territory. Furthermore, the fish and game produced and protected on the private domain cannot all be restricted thereto. Neither feather, foot nor fin acknowledges constructive limitation of locomotion. Elimination from the act before us of the penalties for predatory acts

would be not an injury suffered solely by the association, but shared in by the public as well. While, therefore, the legislation does inure to the benefit of the private corporation, yet an inspection of its purposes and a due consideration of its results lead to the conclusion that it is not solely a private act, but one in which the public has an interest, wherefore, we conclude that the enactment of the provisions under which the defendant was convicted is within the sovereign and police power and not in contravention or violation of the constitutional provision.

The appellee contends that the case is now before us only on certiorari, and that nothing appears upon the record warranting a judgment of reversal. Even adopting the view that the cause is here only on certiorari, the record contains the transcript from the justice exhibiting all of the facts and a statement of the law upon which he acted, and an order allowing the appeal made surpetition of the present appellee. From the transcript and the recitals of the defendant's petition, the motion made for discharge and the terms of the order of the court, sufficient appears to convict the court of error in law. The merits of the case were not passed upon and we remit the record that it may be done. The order discharging the defendant and setting aside the proceedings is reversed, the proceeding is reinstated, and a procedendo is awarded.