## Boyd's Estate.

*Wills—Charitable use—Death within thirty days—Acts of April 26, 1855, June 7, 1911, and June 7, 1917.*

1. A will made less than thirty days before testator's death, and not having been drawn in conformity with the Act of June 7, 1917, § 6, P. L. 403, substantially re-enacting the Act of June 7, 1911, P. L. 702, and amending section 11 of the Act of April 26, 1855, P. L. 328, by substituting thirty days for one calendar month, does not lawfully carry a bequest to a charitable use.

*Constitutional law—Statutes—Title to act—Act of May 26, 1891—Cemeteries—Charitable use.*

2. The Act of May 26, 1891, P. L. 119, entitled "An act legalizing dispositions of property in perpetuity for the care of burial places," and providing that no such disposition shall fail by reason of its "having been made in perpetuity, but such disposition shall be held to be made for a charitable use," is constitutional, and does not violate article iii, section 3 of the Constitution as being insufficient in title.

3. Under the Act of 1891, a gift by will to a cemetery company for the care of a burial lot is a gift to a charitable use, and as such falls within the provisions of the Act of June 7, 1917, P. L. 403, requiring such will to be made within thirty days from the death of the testator.

Audit of executor's first and final account. O. C. Erie Co., Nov. T., 1923, No. 10.

Boyd's Estate.

*Mook & Randall,* for executor; *L. F. Perry,* for residuary legatee.

*J. H. Shoemaker,* for Monument Cemetery.

CLARK, P. J., Feb. 16, 1924.—John H. Boyd died March 5, 1923, testate; his will bears date of Feb. 23, 1923, and it was duly probated March 14, 1923, and letters testamentary were granted March 14, 1923, to William W. MacLeod, who proceeded to the settlement of the estate.

The inventory shows assets of $3682.13, and the accountant asks credit for $1079.18 disbursements, leaving a balance of $2602.95 for distribution. The executor, since filing his account, has received from three sources assets aggregating $175.61, making the total amount for distribution $2778.56.

The executor's suggested distribution is as follows:

| | | |
|---|---:|---:|
| To Monument Cemetery, Philadelphia | | $500.00 |
| To George W. Palmer, Philadelphia | $50.00 | |
| Less 10 per cent. collateral inheritance tax | 5.00 | |
| | | 45.00 |
| To Catherine Palmer, Philadelphia | $50.00 | |
| Less 10 per cent. collateral inheritance tax | 5.00 | |
| | | 45.00 |
| To Mrs. Mabel Lingenfelter, Claysburg, Pa., less claims allowed, costs, etc. | | Residue. |

The testator's wife predeceased him, and he did not leave any issue surviving him.

There is an unpaid claim of the United States Fidelity and Guaranty Company, Farmers' Bank Building, Pittsburgh, Pa., of $58, which is allowed.

One other matter is involved relative to a clause of the will, which is as follows:

"Second. I give, devise and bequeath to the Monument Cemetery, situated in the City of Philadelphia, State of Pennsylvania, the sum of Five Hundred Dollars ($500.00) for the perpetual care and maintenance of Lot Number Three Hundred (300), Section B of said cemetery."

The testator directed in his will "that my remains be interred" in this lot.

Our duty is to determine whether the bequest has been made lawfully, and that leads to a consideration of the Act of May 26, 1891, P. L. 119, which is as follows: The title is, "An act legalizing dispositions in perpetuity for the care of burial places."

The act is: "That no disposition of property hereafter made for the maintenance or care of any cemetery, churchyard or other place for the burial of the dead, or of any portion thereof, or grave therein, or monuments or other erections on or about the same, shall fail by reason of such disposition having been made in perpetuity, but said disposition shall be held to be made for a charitable use."

If the act ended with the word perpetuity, and the concluding words "but said disposition shall be held to be made for a charitable use" had been omitted, it would have constituted "a finished and effective release of such a trust from the prohibition:" Eby's Estate, 30 Dist. R. 338.

If the act consisted merely of the title, "An act legalizing dispositions in perpetuity for the care of burial places" [and the 1st section down to and including the word "perpetuity"], the concluding words, "said disposition shall be held to be made for a charitable use" [being omitted], that would have relieved the trust from a violation of the law against perpetuities, because it would have brought the disposition of the property within the provisions of the Act of April 26, 1855, § 10, P. L. 328, which reads in part: "That no dis-

Boyd's Estate.

position of property hereafter made for any religious, charitable, literary or scientific use shall fail . . . by reason of or being given in perpetuity."

The purport and intent of an act may be first declared by the legislature, or, second, interpreted and determined by the judicial mind.

In the present case, it seems that the courts are relieved from this duty, need not enter upon speculative inquiry, because the act has been stamped by the legislature, the bequest has been designated or declared to be for a charitable use.

Judicial interpretations differ, and in the construction of the Act of May 26, 1891, P. L. 119, under consideration, disagree.

Commenting on this act, the court, in Stuart's Estate, 30 Dist. R. 299, states that: "The legislature, in the latter act, while providing that such a disposition of property should not fail by reason of being made in perpetuity, added that it should be held to be made for a charitable use; a provision that has given rise to conflicting decisions as to the applicability of the Act of April 26, 1855, P. L. 328: Hartgrave's Estate, 28 Dist. R. 44, and Eby's Estate, 37 Lanc. Law Rev. 329;" s. c., 30 Dist. R. 338. The latter sustains the act, and holds that the disposition of property for the care of burial places is for a charitable use: Hartgrave's Estate, 28 Dist. R. 44, *contra*.

It is urged that the title is misleading, that it offends against article III, section 3, of the State Constitution, which requires the subject of an act to be clearly expressed in its title, and that the latter portion of the act, consisting of the words "but said disposition shall be held to be made for a charitable use," should be ignored and the bequest sustained.

Can it not be likewise urged that the remaining part of the act be ignored, leaving the last sentence standing alone?

Which portion of this act does not come within the subject stated in its title?

The subject expressed in the title does not differ in kind from the subject in the enacting part of the act; they are not at variance.

The title covers, applies to and relates to either part of the act as well as to both portions, to the act in its entirety.

To declare an act unconstitutional on the ground that it violates section 3, article III, the case must be clear: Com. *v.* Green, 58 Pa. 226; McKeesport Borough *v.* Owens, 6 W. N. C. 492.

In a case involving allegations not sufficiently proven, it was held: "The general rule applies that one who claims an act of the legislature to be unconstitutional must prove his case beyond doubt before he is in a position to ask a court to set the statute aside as unconstitutional:" Collins *v.* Lewis, 276 Pa. 435-438.

"It will not do to impale the legislation of the State upon the sharp points of criticism, but we must give each title as it comes before us a reasonable interpretation:" Allegheny County Home's Case, 77 Pa. 77-80, approved in Millvale Borough *v.* Evergreen Ry. Co., 131 Pa. 1-15.

Section 3 of article III of the Constitution is in effect the same as the constitutional Amendment of 1864, art. XI: Philadelphia *v.* Ridge Avenue Ry. Co., 142 Pa. 484.

Cases relating to title as provided in the Amendment of 1864 are applicable to the interpretation of section 3, article III, of the present Constitution.

True it is, if the subject expressed in the title is not broad enough to cover all its provisions, such parts of the act as are not within the purview of the title are void: 2 Vale's Penna. Digest, 3342. The converse must then be true.

In the act before us, the title comprehends and covers all its provisions.

The constitutional prohibition was made for the purpose of preventing the

passage of "omnibus bills" containing subjects foreign to and having no relation to each other, interpreting the 8th section, 11th article, being the second Amendment of 1864 in the constitution preceding our present Constitution—the provisions in each are substantially the same: Blood v. Mercelliott, 53 Pa. 391. Such was the law then and is now.

The purpose of article III, section 3, was to prevent fraud and deception: Provident L. & T. Co. v. Hammond, 230 Pa. 407-414.

"The essential parts of a statute are the declaratory, the directory, the remedial and vindicatory; and if its title clearly expresses the subject to which it is to apply, it is sufficient without expressing in detail the character of the several parts:" Com. v. Jones, 4 Pa. Superior Ct. 362, 370.

The title in the Act of May 26, 1891, P. L. 119, relates to one subject, and the statute is not unconstitutional within the meaning of article III, although it contains different branches of the same general subject, if they are all cognate: Kelley v. Mayberry Township, 154 Pa. 440, 449.

We do not find any portions or branches of the act in conflict with this decision, the law as thus defined.

The act is remedial, declaratory and directory, and we cannot say that the legislature exceeded its legislative functions.

This court is unwilling to declare this act unconstitutional except upon unquestioned grounds.

A title need not embody all the distinct provisions of a bill in detail, nor, as has been said, serve as an index or digest of its contents; but if it does, it is not for that reason unconstitutional. It is enough, however, if it fairly gives notice of the proposed legislation, so as reasonably to lead to an inquiry into what is contained in the body of the act. See cases cited, 1 Purd., 147.

Emphasis is given in many of the decisions that the word "clearly" in section 3, supra, must be given full effect in determining whether the title covers the particular subject in the body of the statute: Strain v. Kern, 277 Pa. 209-211, in which case there is cited Dorsey's Appeal, 72 Pa. 192; Provident L. & T. Co. v. Hammond, 230 Pa. 407, which contain a full and exhaustive consideration of valid and invalid titles.

The Provident Life and Trust Co.'s Appeal, 249 Pa. 389, has been called to our attention. In an examination of this decision we do not find in the opinion of Gest, J., delivered for the Orphans' Court in banc, or in the affirmative decision of the Supreme Court, any reference to the point involved in the instant case; the Act of 1891 was not passed upon. The main question in the case cited seems to relate to what constitutes a disqualifying interest in an attesting witness to a will.

We believe that it was the legislative intent to make assurance doubly sure, and this was done in the passage of the act in question, and that bequests like the one in the present case shall be held to be made for a charitable use.

It may not be out of place to consider the history of the act on its passage by the legislature.

In the words of the act as it now stands, the bill was presented in the Senate by the late Hon. Boies Penrose, when he was a member of that body, Jan. 27, 1891. It was referred to the Judiciary General Committee, subsequently reported from that committee, read three different times on three different days, and on call of the yeas and nays passed the Senate unanimously and ordered sent to the House for concurrence.

In the House it was sent to the General Judiciary Committee, and March 12, 1891, reported from that committee, and passed its first reading March 13th,

its second May 7th, and on its third reading and final passage, upon the call of the yeas and nays, passed without a dissenting vote.

The Senate General Judiciary Committee was composed of eighteen members; all of them, excepting two, were lawyers. The similar committee of the House had twenty-five members; all of whom, excepting two, were also lawyers. It passed the scrutiny of thirty-nine lawyer members of the committee, the whole of the membership of those committees, and the entire membership of both the Senate and House, went to the Governor, was presumably examined by the Attorney-General, Hon. W. U. Hensel, and ultimately approved by the Governor, Robert E. Pattison. Some of these lawyer members have been elevated to the bench.

Did the legislature exceed its legislative functions? We think not.

And we decide the will made less than thirty days before testator's death, and not having been drawn in conformity with the Act of June 7, 1917, § 6, P. L. 403, substantially re-enacting the Act of June 7, 1911, P. L. 702, which amended section 11 of the Act of April 26, 1855, P. L. 328, thirty days being substituted for one calendar month, does not lawfully bequeath to the Monument Cemetery the $500 stated in the second clause, and that this amount passes to the residuary legatee.

We leave to those who share the testator's bounty to carry out his expressed intent to provide for the care of the burial lot, and this we are informed is contemplated.

And now, to wit, Feb. 16, 1924, it is adjudged, ordered and decreed that the executor distribute the assets of the estate, $58 to the United States Fidelity and Guaranty Company, and the bequest of $500 is awarded to the residuary legatee, Mrs. Mabel Lingenfelter. Payments to George W. Palmer of $45 and to Catherine Palmer of $45 should be made as set forth in the suggested distribution. The executor's account in other respects appears correct and is confirmed.                                    From Otto Herbst, Erie, Pa.