## Keystone Automobile Club's Charter.

*E. Wallace Chadwick* (of *Taylor, Chadwick & Weeks*), for petitioner.
*John E. McDonough,* contra.

MacDade, J., Feb. 1, 1929.—This is an application filed on Dec. 17, 1928, and under the Act of April 17, 1876, P. L. 30 (authorizing the amendment, alteration and improvement of charters of corporations of the first class), for the amendment of the charter of the Keystone Automobile Club, a corporation of the first class. The club was chartered by this court on Sept. 19, 1911, under the name of the Automobile Club of Delaware County, after having previously had an existence of over five years as a voluntary association, and having established a record of service to the motorists of Delaware County in particular. At that time, and in the application for the charter, the annual income, other than from real estate, was fixed as not to exceed $20,000; the number of officers and directors was fixed, and the purpose was proposed to be "to maintain a club for social enjoyment, and a club-house, and for the comfort, protection and convenience of its members in the pursuit of the pastime of automobiling."

On Dec. 24, 1917, this court, upon due application, amended this charter so as to change the name of Automobile Club of Delaware County to the Keystone Automobile Club and to increase the number of directors to twenty-one.

The latter corporation now applies for a further amendment, increasing the authorized number of directors to twenty-seven (1927), the authorized annual income to a sum not exceeding $2,000,000, and to enlarge upon and re-express the purpose of the corporation as follows:

"Second. The purpose for which this corporation is formed is to promote the construction and maintenance of public highways, to promote the safe and convenient use of the public highways, to collect and disseminate touring and

other information valuable to automobile users, to promote the comfort, protection, convenience and interests and to protect the rights of automobile owners and users in general, and its members in particular, to facilitate the co-operation of its members to their mutual advantage and protection in matters relating to the use and ownership of motor-vehicles, to maintain a club for social enjoyment, and a club-house, and to purchase, lease and improve such real estate or other property as may be necessary for such aforesaid purpose."

The reason for the proposed amendment to paragraph "Second" of the charter is that the club has increased tremendously in membership, and, in common with other growing automobile clubs, has greatly broadened the scope of its activities, and the amended purpose is more definitely expressive of its present and anticipated future purpose; the reason for the proposed amendment to paragraph "Sixth" is that the club has enlarged the field of its activities, and the increased directorate is essential to adequate representation of the membership on the board of directors; the reason for the proposed amendment to paragraph "Eighth" of the charter is that the rapid growth of the club (its membership now approximating 50,000), and the enlarged scope and field of its activities make a more liberal allowance of permitted annual income essential to its adequate and proper functioning.

These proposed amendments are opposed by a member of the club, one of some 50,000 interested persons constituting its total membership, as will more fully appear by reference to the objections herein filed to the granting of the amendment proposed, as follows:

1. Your objector is, and has been for many years, a member of the Keystone Automobile Club.

2. He makes this objection in his own behalf and in behalf of such other members of the club as may desire to share therein and in the expense thereof.

3. The application for the amendment of this charter is defective because it does not show that any meeting was held at a place at which such meeting legally is authorized to be held.

4. No notice of said meeting was given as required by the laws of the State of Pennsylvania and the constitution and by-laws of the said Keystone Automobile Club.

5. A meeting to consider the authority to apply for this amendment was only attended by ninety-five persons.

6. More than one-half of the persons who attended said meeting as members of said club were in the pay and under the salary of said club and pecuniarily interested in said amendment.

7. The application is defective in that it seeks by amendment to authorize an incorporation for more than one of the purposes authorized by law.

8. The application is defective because [and] in so far as it seeks corporate right to "promote the construction and maintenance of public highways." Generally, the court has no authority to authorize the same.

9. The application is defective because [and] in so far as it seeks the right "to promote the safe and convenient use of public highways, to collect and disseminate touring and other information valuable to automobile users." No authority exists in the court to authorize such amendment to this charter.

10. The application is defective because it seeks to authorize an amendment "to promote the comfort, protection, convenience and interests and to protect the rights of automobile owners and users in general, and its members in particular, to facilitate the co-operation of its members to their mutual advantage and protection in matters relating to the use and ownership of motor-vehicles,"

no authority to do which resides in the court under the provisions of the law authorizing a corporation without profit.

11. The application is defective because [and] in so far as it seeks the right to amend the charter "to maintain a club for social enjoyment, and a club-house, and to purchase, lease and improve such real estate or other property as may be necessary for such aforesaid purpose." Said corporation already has this right, and the amendment in that respect is unnecessary.

12. No authority resides in the court to make this amendment unless it be with the limits that the real estate owned by such a corporation shall not exceed in value an annual income of $20,000.

13. The application is defective because it seeks, by amendment, to authorize this club, under the guides of its charter, to do more than one thing provided by the act.

14. The application is defective because it does not set forth that the membership in this club shall be limited to the citizens of the State of Pennsylvania.

15. The application is defective because it does not show in what regard it is proposed to promote the comfort, protection, convenience and interests of the rights of automobile owners and users in general, and to members in particular, nor does it show that any of these things are to be accomplished in accordance with the spirit of the act of assembly authorizing a corporation not for profit.

16. The application is defective because it seeks to increase the income of the club to $2,000,000, a sum out of all proportion to the spirit and the purpose of the act of assembly authorizing the incorporation and execution of charter corporations not for profit.

17. The purpose of the alleged increase in the income of this corporation is in order to afford a sum for the payment of large salaries to officers and other employees of the Keystone Automobile Club for purposes and enterprises not authorized by its charter and contrary to the provisions of the law authorizing the incorporation of such a charter or the amendment thereto.

18. Objection is also made to this amendment, for the reason that there is now pending in the Court of Common Pleas of Delaware County, as of No. 525, December Term, 1928, a bill in equity, wherein your objector is the complainant and the Keystone Automobile Club and others are the defendants, the purpose of which bill is to compel the management of the Keystone Automobile Club to conduct its affairs according to law. The matters and things set forth in said bill are either urged as an objection against said charter, and the said proceeding is hereby incorporated in this objection for the consideration of the court, and for the further reason that said application to amend the charter of the Keystone Automobile Club is being made for the purpose of anticipating the trial of the equity suit herein referred to, as appears from the public statement made by the president of said Keystone Automobile Club, J. Borton Weeks, Esq., which newspaper statement is hereto attached and made part hereof.

Since the matters involved address themselves entirely to the discretion of the court, it may fairly be said that the application represents the overwhelming, preponderant wishes of the membership, and is, therefore, fairly entitled to liberality of treatment from the courts.

The application was authorized at a special meeting of the club, held at Brookline, in this county, on Dec. 15, 1928, at the call of the president, pursuant to a printed notice mailed to all members; at which meeting ninety-five members were present, including the present objector, Arthur Freeston, who

cast the only negative vote. The minutes of the meeting were offered in evidence by the objectant, and proved to be in due form, fully evidencing the consent of the majority of those present to the proposed application. The objectant participated in the meeting, and, therefore, it does not stand him in good stead to make objections to its regularity, and, in addition, there stands against him the presumptions of regularity raised by the record of the meeting which he himself accredits by his offers.

The court, very logically and properly, as we think, has declined to permit the objectant to raise in this proceeding questions of the club's activities in the insurance field, and the conclusion as to this is fairly to be helped by objectant's counsel's admission that these activities (now already made the subject of inquiry in a collateral proceeding in equity by the objectant herein) are innocent and even meritorious, but technically objectionable as beyond the corporation's present powers. Even taking this latter to be true, its relevancy as a reason against granting the proposed amendments does not clearly appear; it rather emphasizes the desirability of enlarging the charter so that these alleged meritorious functions may be fully exercised and the corporation granted a permitted income commensurate with its opportunities for service to its large membership in particular and the public in general.

The real question before the court then seems to be, are these proposed amendments such as, in the language of the act, are "lawful and beneficial, not injurious to the community, and not in conflict with the requirements of the Corporation Act of 1874, and its supplements, nor with the Constitution of this Commonwealth."

We think these proposed amendments meet this test. A wide discretion with respect to charters and amendments thereof of first class corporations is vested in the Common Pleas, reviewable, incidentally, under the statute only as to jurisdiction and formality, and by *certiorari*, not appeal. This discretion, we think, may properly be exercised in the instant case by granting the amendments. The objectant can point to no consideration of public policy which would be jeopardized thereby. Automobile clubs *per se* are not contrary to the public interest, nor is it objectionable that they have twenty-seven directors, or, finally, that they be permitted to have an income of $2,000,000 if their members are willing to provide that much for their mutual purposes. The decision of this latter aspect of the matter is in the courts under a section which provides as follows: "It shall be the duty of the court in granting a charter of incorporation for any purpose to limit the yearly income of such corporation, other than from real estate, to such sum as in the opinion of the court will not be injurious or prejudicial to the community" (Act of Feb. 20, 1854, § 3, P. L. 91; 1 Stewart's Purdon, page 779, par. 14).

The practice adopted by the courts elsewhere in expressing this limitation as "such sum as shall not be in excess of any legal limitation" has been found practical and beneficial and, incidentally, convenient. Thus we find in the charter of the William Penn Motor Club, called to our attention at bar, approved April 30, 1927, as of No. 6907, March Term, 1927, by Common Pleas No. 4 of Philadelphia, by Audenried, P. J., the following section:

"Fifth. There is no capital stock in this corporation and its income shall not exceed the amount limited by law."

This court has preferred to express a limit in amount, and applicants here are by practice required to propose the amount that they believe will be at once sufficient and still proper for the exercise of their functions. But this carries no necessary suggestion that the amount must be absolutely small; apparently what is intended is that it shall bear a reasonable relation to the

activities of the corporation. A court might view with suspicion a proposed income of $10,000 a year for some corporations, but would hardly be surprised at a suggested limit of a million dollars for The Union League of Philadelphia, the Manufacturers' Club or the Penn Athletic Club, all of Philadelphia. We do not perceive any inconsistency between authorizing an income of $20,000 for the Keystone Automobile Club as it existed in 1911, with its small membership, by present comparison, and $2,000,000 for the same club as it now exists with a membership of 50,000 and an established ratio of growth which has already made it the second or third largest organization of its kind in the United States.

So long as corporations of the first class include such varied activities as great universities and small business colleges, hospitals with thousands of beds and chapels with a few score communicants, great fraternal orders and small civic societies, the courts will be required to administer this section of the law with liberality so as to advance and not hamper these commendable objects; as exampled by the charter granted by Common Pleas No. 4 of Philadelphia to the Regional Planning Federation of the Philadelphia Tri-State District (No. 10359, March Term, 1928), whose purpose is expressed to be "the creation and promotion of a plan for the physical, economic and social advance of the Philadelphia Tri-State District," and whose permitted income at the commencement of its activities was expressed at the instance of the applicants at $500,000.

It not appearing that the community is threatened with any injury or prejudice, no matter what income the members of this organization may provide, any objection to this amendment would seem to fall.

There remains then to be discussed seriously only the question whether the proposed purpose of the club is worthy of this court's approval. The objections made appear captious; if an automobile club is legal at all, these are proper and reasonable activities for such an organization. No one can now be permitted to question the legality of such a club; this became res adjudicata as against the world when this court in 1911 issued the original charter, and it would seem particularly invulnerable as against this objectant who voluntarily became a member in 1917 and continues to be such to the present time.

The original charter purpose set out three expressed and interrelated activities, the last very broad in its scope: (1) To maintain a club for social enjoyment; (2) and a club-house; (3) and for the comfort, protection and convenience of its members in the pursuit of the pastime of automobiling. But no one would have any difficulty in identifying these as being in all aspects of one general purpose. This court finds that the various activities detailed in the proposed amendment to this paragraph second are likewise directly interrelated and still all aspects of the same proper general purpose. Counsel for the objectant may have confused difference of purpose with difference of method of serving a single purpose. There is no legal objection to a detailed expression of the matter in which a proper corporate purpose may be served; indeed, the law books contain many cases in which the courts have taken objection to proposed charters for such general purpose as "social enjoyment" and the like, without particularizing what method or kind of social enjoyment was intended: Monroe Republican Club, 19 Pa. C. C. Reps. 568; Jacksonian Club, 1 Dist. R. 110; Nether Providence Ass'n, 2 Dist. R. 702.

The Supreme Court, in Roofing, etc., Ass'n, 200 Pa. 111 (1901), points out that the words of the Act of April 29, 1874, P. L. 73, are used in their popular connotation, and are to be liberally, not strictly, construed; using, also, this language, which seems very applicable to the question now being

discussed: "Each of the numbered sub-divisions of this section of the statute describes a particular class of objects, the promotion of which is the purpose of the provision, and to carry out its full intent must necessarily be held to authorize a corporation for one or more, or all, of the special purposes that may come within the general scheme."

Nor does a very considerable latitude in the expression of purpose appear to be objectional to our appellate courts. Thus, in Derry Council v. State Council of Pennsylvania, Junior Order United American Mechanics, 197 Pa. 413, Mr. Justice Brown has occasion to quote the purposes of the corporation, whose charter was issued by Common Pleas No. 3, Philadelphia, in 1893, as follows (the divisions and numbering being ours) : "The purposes of the order; as an unincorporated society, continued to be the same after its incor- poration, and were beneficial and protective, and (1) to maintain and promote the interest of the Americans and shield them from the depressing effects of foreign competition; (2) to establish a sick and general fund; (3) to main- tain the public school system of the United States and to prevent sectarian interference therewith; (4) to uphold the reading of the Bible therein; (5) to assist the American youth in obtaining employment, and to encourage them in business; (6) to afford relief to the members and their families, etc."

Incidentally, the learned Supreme Court mentioned in passing that "a majority of its members and councils are non-residents of Pennsylvania," and sustained a corporate action taken at a meeting in Minneapolis; and the ques- tion of non-residents there decided squarely meets another proposition of law advanced by the objectant.

Nor is the purpose now asked to be authorized by this amendment essen- tially different from the purposes expressed in other charters of similar organizations allowed by other careful courts of this State. Thus, in the case of William Penn Motor Club, above referred to (C. P. No. 4, Philadelphia County, No. 6907, March Term, 1927), the purpose is expressed as follows:

"Second. The purposes of this corporation shall be the promoting of socia- bility among its members, promoting improvements of roads and for the pro- tection, general interest and welfare of motorists and to promote greater care in driving and in adherence to the laws in reference thereto."

Judge Niles, in the matter of York County Automobile Club (C. P. York County, No. 7978), on June 28, 1926, approved a charter with the following expression of purpose:

"2. The purpose for which this association is formed is lawfully to advance and protect the interests and enjoyment of the users of motor-vehicles, by promoting the cause of good roads within the State and Nation; furthering the cause of highway safety, encouraging automobile touring to the historical shrines and scenic grandeurs of Pennsylvania and co-operating for their mutual advantage and the better attainment of the aforesaid purpose."

The charter of the Lancaster Automobile Club, approved July 19, 1916, by Charles I. Landis, P. J., and A. B. Hassler, J., contains the following expressed purpose:

"2. The purposes for which the said corporation is formed are as follows: The maintenance of a club for social enjoyments through the holding of social meetings of persons interested in automobiling and in lawful ways inaugura- tion and support of movements contributing to their comfort and the preserva- tion of their rights."

Judge Miller, of Montgomery County, in 1923, authorized the charter of the Pennsylvania State Automobile Association (No. 30, April Term, 1923), with purpose as follows:

"2. The purpose for which this association is formed is lawfully to advance and protect the interests and enjoyment of the users of motor-vehicles, by promoting the cause of good roads within the State and Nation, furthering the cause of highway safety, encouraging automobile touring to the historical shrines and scenic grandeurs of Pennsylvania, and assisting in the organization of local automobile clubs, touring bureaus and good roads associations through the State, co-operating with them for their mutual advantage and the better attainment of the aforesaid purpose."

The same court, in the matter of the" Keystone Motor Club" (No. 6, Sept. Term, 1925, C. P. Montgomery County), approved the following expression of purpose:

"2. Said corporation is formed for the purpose of promoting the construction and maintenance of public highways, to promote the safe and convenient use of the public highways, to collect and disseminate touring and other information valuable to automobile users, to promote the interests and to protect the rights of automobile owners and users generally, and to conduct a club for social enjoyment; and to purchase, hold, lease and improve such real estate or other property as may be necessary for such aforesaid purpose."

The Allegheny Common Pleas (Judge Kline) approved the charter of the Pittsburgh Motor Club (C. P. Allegheny County, No. 1064, April Term, 1923), with purpose expressed as follows:

"Second. The purpose for which the corporation is formed is to promote the construction, improvements and maintenance of streets and highways, the general welfare of motorists, to collect and distribute touring highway information, assist in the enactment, maintenance and enforcement of good and beneficial laws, a uniform system of road-marking and sign-posting, to extend the education of 'Safety Always,' provide a standardized emergency road service, advise owners as to operation of cars and laws governing same, aid authorities in the detection and punishment of auto thieves, and to furnish all aid and assistance possible for the better operation of motor cars."

So, likewise, the Philadelphia Common Pleas, in the matter of the charter of the Automobile Club of Philadelphia, which was granted May 25, 1901, ten years before the original incorporation of this club (as of No. 304, June Term, 1900; C. P. No. 4, Philadelphia County), approved a purpose for such organization as follows:

"Second. Said corporation is formed for the purpose of maintaining a club for social enjoyment, with the provisions of a club-house and other requisites for the comfort and convenience of its members in the pursuit of the pastime of automobiling, together with the advancement of automobiling interests generally by force of example of the use of automobiles and similar machines as practical and enjoyable aids to locomotion and for such other purposes connected therewith as may be proper and expedient."

The petitioners have gone to great lengths to demonstrate to us that there is nothing in the objections made to the form of the proposed amendments by citing these examples of the practice of other courts which are not otherwise conveniently available to us, and since they demonstrate, without more, the propriety of granting the petition, their efforts are not wholly in vain, for we hold the proposed amendments are "lawful and beneficial, not injurious to the community, and not in conflict with the requirements of the Corporation Act of 1874, and its supplements, nor with the Constitution of this Commonwealth."

Indeed, an application for a charter of the first class, it is admitted, should set forth the purpose of corporators in the words of the act of assembly so as

to show it is embraced within one of the enumerated classes; it should also be devoted to a single purpose, the method of carrying out which is indicated and lawful, and the qualifications for membership should be stated, as well as how amendments can be made: Master Builders' Exchange, 12 Dist. R. 670; Xantha Beneficial Ass'n, 8 Dist. R. 142; Master Granite, &c., Ass'n, 9 Dist. R. 357; Columbus, etc., Citizens' Ass'n, 47 Pitts. L. J. 47.

As well, an application for a charter of the first class, the purpose of which is stated to be "the maintenance of a club for social enjoyments," without specifying the nature of the proposed social enjoyments, or how they are to be conducted, or how the club is to be supported or continued, will not be granted: Penn Farmers' Club, 24 Pa. C. C. Reps. 415.

Having in mind, therefore, that the purpose of the corporation may be enlarged upon in detail, we do not consider that the amendments desired in the present application contain subjects foreign to each other or are calculated to mislead and deceive; but, on the other hand, the court holds that the charter (including amendments thereto) may still contain any number of provisions properly connected with and germane to the expressed purpose without violating any constitutional requirements or the law. By analogy, see Blood v. Mercelliot, 53 Pa. 391; Com. v. Green, 58 Pa. 226; Yeager v. Weaver, 64 Pa. 425; Com. v. Sellers, 130 Pa. 32; Bradley v. Pittsburgh, 130 Pa. 475; Rodebaugh v. Traction Co., 190 Pa. 358; Com. v. Moir, 199 Pa. 534; Goebler v. Wilhelm, 17 Pa. Superior Ct. 432; Franklin v. Hancock, 204 Pa. 110.

The unity of the subject permitted by the corporation statute is to be determined by its paramount purpose rather than by the details through which that purpose is to be accomplished. We think this principle of law is applicable to a charter of a corporation of the first class in designating its purpose. The purpose may have but one object, while the measures necessary for the attainment of that object may necessarily embrace many subordinate subjects differing in their nature and particular effect, yet all contributing to, and comprised within, the principal object. Everything which the nature of the purpose reasonably suggests as necessary or appropriate for the accomplishment of the expressed purpose can be stated in the charter or any amendment thereto. This principle is greatly clarified in Com. v. Jones, 4 Pa. Superior Ct. 362, 368, quoted with approval in Pittsburgh v. Daly, 5 Pa. Superior Ct. 528, 535.

So can the purpose of a charter (and, as well, an amendment or amendments thereto) which seeks to accomplish one general purpose by one general means, just as a statute seeks to accomplish one general purpose by one general subject, be deemed to contain but one subject, though the details or specific means are multiplied to any extent, provided they are in fact subordinate to and germane to the general aim: In re Opening of Arrott Street, 18 W. N. C. 121; Com. v. Charity Hospital, 198 Pa. 270.

A purpose has but one object, no matter how many different matters it relates to, if they are all cognate and but different branches of the same general subject: Kelley v. Mayberry Township, 154 Pa. 440.

For instance, a bicycle association which agrees with its members and is incorporated for the following purposes, "(1) Clean your bicycle twice during the year. (2) Repair tire when punctured by accident. (3) Repair bicycle when damaged by accident. (4) Replace bicycle when destroyed by accident. (5) Replace bicycle when stolen, if not recovered in eight weeks, and provide a bicycle during that time," is within the act (Com. v. The Provident Bicycle Ass'n, 178 Pa. 636), while it is held in Application for Incorporation, 34 York Leg. Record, 123, a corporation should be devoted to a single purpose: Master

Builders' Exchange, 12 Dist. R. 670; Right Warden Grand Court, 8 Dist. R. 127; Nat. Lit. Ass'n, 30 Pa. 150.

We think the present application for amendment to the charter is for a single purpose and it does not change or alter the single purpose of the charter already existent when allowed and approved, as hereinafter decreed by final order.

The character of a corporation is determined by its object as expressed in its charter by acts performed under its conferred powers: Collins v. Kephart, 271 Pa. 428.

And the terms "any lawful purpose" and "any lawful business," as used in the corporation acts, are synonymous: Thomas Diagnostic Clinic, 30 Dist. R. 778, 50 Pa. C. C. Reps. 356.

The court cannot reject as not "a good purpose" for incorporation one for which the statute gives the right of incorporation: Umberto First, &c., Society, 25 Dist. R. 414.

This latter case also decides: "If the incorporators are qualified and the object of the proposed corporation lawful, it cannot be assumed that the corporation will be handed over to unlawful elements or purposes."

On an application for a charter, it is not the duty of the court to pass upon and select what seems to it the best scheme for carrying out the purpose of a proposed corporation, as the incorporators must determine that question for themselves: Pittsburgh, &c., Ret. Fund Ass'n, 17 Dist. R. 867; Marsh Creek Fishing Club's Charter, 36 Pa. C. C. Reps. 593; Brodrof. Svea, 15 Pa. C. C. Reps. 516.

The certificate should be approved where the application is in legal form and the court is satisfied that the purpose is proper, lawful and not injurious to the community: In re Continental Benefit Society, 42 W. N. C. 183.

Non-resident or alien friend stockholders may be directors of corporations in this State: Com. v. Detwiller, 131 Pa. 614.

The above decision is cited because the question of non-residents arose in the proceedings, and as well did the question of what constitutes a majority for the transaction of the business of the corporation, considering that it now has approximately a membership of 50,000 men. Where could they be accommodated if all desired to attend a meeting? The capacity of the Academy of Music has been ample heretofore. Perhaps Franklin Field or the Municipal Stadium may be engaged for future meetings. However, this latter question has been decided by our courts in Myers v. Union League of Phila., 17 Dist. R. 301, which holds that a majority of a meeting means a majority of those who choose to take part in its proceedings.

Therefore, holding to the above views, citing supporting authorities, as we do, on every possible phase of the matter presented and scrutinizing carefully the petition or application for amendments to the charter, the objections thereto and the testimony adduced thereon, we make the following

*Order and decree.*

And now, Feb. 1, 1929, the within petition for amendment to the charter of incorporation of the Keystone Automobile Club and objections to the granting of the same having been presented to the court *in banc*, accompanied by due proof of publication of notice of this application for amendment of charter, as required by the Act of Assembly and Rules of this Court in such cases made and provided, we certify that we have examined and perused the said petition and objections thereto and heard testimony therein after a hearing duly granted thereon; and, after due consideration, the court doth order and

decree that the amendments as prayed for be and they are hereby allowed and approved; and the court doth further decree that we have found the same to be in proper form and within the first class approved in section 2nd of the Act of the General Assembly of the Commonwealth of Pennsylvania, entitled "An act to provide for the incorporation and regulation of certain corporations, approved the 29th day of April, 1874, and the supplements thereto;" and, further, the same appearing lawful and beneficial and not injurious to the community and not in conflict with the requirements of the Corporation Act of 1874, and its supplements, nor with the Constitution of this Commonwealth.

We also do hereby order and decree that the said amendments to the charter of the Keystone Automobile Club aforesaid be and the same are hereby allowed and approved, and that, upon the recording of the same and of this order and decree, the said amendments shall become of full force and effect, the same as if they had been originally incorporated and made part of the said charter, with any and all amendments thereto heretofore made, for the purpose and upon the terms therein stated.

From William R. Toal, Media, Pa.